STATE ᴇx Rᴇʟ. CASEY, Aᴘᴘᴇʟʟᴀɴᴛ, *v.* BREWER ᴇᴛ ᴀʟ., Rᴇsᴘᴏɴᴅᴇɴᴛs.

(No. 7,849.)

(Submitted January 24, 1939. Decided February 4, 1939.)

[88 Pac. (2d) 49.]

*Mr. H. A. Kendall,* for Appellant, submitted a brief, and argued the cause orally.

*Messrs. Foot, Aronson & Foot,* for Respondents, submitted a brief; *Mr. Eugene B. Foot* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, appearing as *Amicus Curiae,* submitted a brief; *Mr. Carl N. Thompson,* Assistant Attorney General, argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Flathead county sustaining a motion to quash an alternative writ of mandamus issued on application of relator. The proceeding arose out of an election held with relation to the Kalispell Fire Department Relief Association. Relator purports to be the duly elected treasurer of the association, while respondents, particularly C. H. Brewer, make a similar claim to the office. Relator's petition was originally against one William Nollar, treasurer of the association, whose term of office had expired. The present respondents were brought into the proceeding as substituted parties defendant.

The petition shows substantially: That the city of Kalispell has a fire department, established as authorized by Chapter 391, Revised Codes; that in November, 1927, the confirmed members of that department, together with the members of the volunteer fire department, organized a relief association and incorporated it as provided by law; that the sole purpose of the association was to manage and disburse the firemen's disability and pension fund as by the law provided; and that officers were annually elected the first Wednesday of January, the treasurer being the custodian and officer directly in charge of the fund. The petition alleged that in August, 1937, the city council by ordinance abolished the volunteer fire department, and established a paid department consisting of seven men and a chief; that on the second Wednesday in January, 1938, the regular election date, the association held its regular meeting for the election of officers, at which meeting there were present all of the confirmed members of the fire department, all of whom were eligible members of the association; that relator was duly elected treasurer

and immediately thereafter qualified and furnished the required bond; that after qualifying he made demand upon Nollar, his predecessor in office, to turn over and deliver to him all the cash, funds, securities and property belonging to the association; that Nollar refused to comply with such demand and this proceeding was commenced to compel him to comply.

On February 2, 1938, an alternative writ of mandate was served upon Nollar, who, in response thereto, filed a petition and affidavit for substitution of parties defendant. In his petition he set forth, briefly: That he considered himself a mere stakeholder of the property demanded of him; that he made no personal or official claim thereto; that relator, and other persons as hereinafter more fully set out, made conflicting claims to the property. The petition then proceeded to set out the facts giving rise to the conflicting claims, including the history of the relief association. In so far as relator is concerned, the petition duplicates the matters set forth by him in his petition with reference to his election and right to the office. In addition, however, Nollar alleged: That on February 2, 1938, another annual meeting was held, or purported to have been held, by the relief association and at which only volunteer members thereof were present; that officers were elected, including a treasurer, and that on February 1, he, Nollar, resigned as treasurer; that ever since the two elections conflicting demands have been made by the respective groups to the property in the hands of petitioner; that the demands were made upon petitioner without collusion with any of the conflicting claimants, and that each group honestly believed that they were in fact the respective officers of the association; that petitioner did not know the rights of the conflicting claimants with respect to the property in his hands, and that he, therefore, requested an order substituting the purported officers elected at the election held by the volunteers, as parties defendant in his stead, and also an order discharging him from all liability upon his delivery of the funds and securities into court.

The officers, who purport to be such by virtue of the election held by the volunteers, filed a return to Nollar's petition for substitution, wherein they joined in his prayer for the sub-

stitution of themselves as parties defendant. All parties and their attorneys being present and consenting, the order of substitution was made and the new parties defendant were ordered to "make their appearance herein to the petition and alternative writ * * * and that the cause thereupon proceed as if said substituted defendants had been originally parties defendant to said proceeding, and with like force and effect." Nollar was thereupon ordered to deliver the properties of the relief association's treasury department into court, which he did.

Respondents, the substituted defendants, filed a motion to quash the alternative writ of mandate based upon the pleadings, files and proceedings of the cause on file. Six grounds were specified in the motion which, in substance, challenged the sufficiency of the petition; the effect of the abolition of the volunteer department; regularity of relator's election; duty of defendant Nollar to turn over properties of the office, and the statement of legal conclusions.

The motion to quash was sustained and the proceeding ordered dismissed. A judgment was entered which ordered that the funds, property and securities in the hands of the clerk of the court be delivered to the respondents. This appeal resulted, and relator specifies that the court erred in (a) sustaining the motion to quash; (b) dismissing the proceeding, and (c) ordering the property of the association turned over to respondents.

It is urged by respondents that relator has mistaken his remedy and that *quo warranto*, rather than mandamus, is the only appropriate remedy. We are unable to agree with this conclusion. Generally speaking, *quo warranto* is the proper remedy to try title to an office. (Secs. 9576 et seq., Rev. Codes, and Annotation in 84 A. L. R., p. 1114.) However, we think the peculiar state of the pleadings and other files of record justify a disposition of the issues notwithstanding the fact that the writ demanded was designated as mandamus.

The actual relief asked for in the petition was that the predecessor treasurer of the relief association turn over the funds and properties of that office. To that extent we are of the opinion that relator selected the proper remedy for the relief sought,

in view of the existence of what we deem a prima facie showing in his petition to the right of the office. (*State ex rel. Kurth* v. *Grinde*, 96 Mont. 608, 32 Pac. (2d) 15; sec. 9848, Rev. Codes.) Up to this point of the proceeding there was no question of title to the office involved, because the petition alleged relator had been regularly elected and had qualified. Defendant Nollar's term had expired, and he, therefore, made no official claim to the office. However, when the substitution of parties defendant was made, an element of *quo warranto* was injected into the case, namely, the title to the office of treasurer.

In *State ex rel. Kurth* v. *Grinde*, supra, this court was called upon to review a mandamus proceeding in which there was a conflict between the parties with respect to the possession of a city office. In that case we recognized the rule that mandamus was the proper remedy for one having the prima facie right to an office to obtain possession thereof, but not the proper remedy to try title to an office. But we also gave effect to the further rule that where a cause is submitted to the court for final determination on an agreed statement of facts, "it is immaterial what the form of action is. The relief which the facts warrant will be granted whatever the form of the action." On principle, the rule of that case is applicable here. We do not assume to say that in the instant case the parties in so many words submitted the matter to the trial court for final determination upon an agreed statement of facts, within the purview of Chapter 96, Revised Codes. They did in effect nevertheless do just that. The relator's petition, Nollar's petition and affidavit for substitution of defendants, and respondents' return to the petition for substitution tendered to the court every fact issue necessary for final determination of the controversy. The facts supporting the respective contentions are by the pleadings and other files unequivocally admitted and uncontradicted, and therefore it seems to us they leave nothing to be decided but an ultimate question of law, which this court may decide. (Compare *Birdwell* v. *Three Forks Portland Cement Co.*, 98 Mont. 483, 40 Pac. (2d) 43.)

It has been the growing practice of this court in entertaining applications for any of the extraordinary remedies, to grant

whatever relief the record before it may justify, notwithstanding the particular type of writ requested. It is our view that by thus placing the emphasis on substance rather than form, litigation may more speedily and effectively be disposed of at a minimum expense to all parties concerned. (*State ex rel. Peel v. District Court*, 59 Mont. 505, 197 Pac. 741; *State ex rel. Bullard v. District Court*, 86 Mont. 358, 284 Pac. 125; *State ex rel. Redle v. District Court*, 102 Mont. 541, 59 Pac. (2d) 58; *State ex rel. Nelson v. District Court*, 107 Mont. 167, 81 Pac. (2d) 699.) We see no good reason why the district courts of the state should not follow the same practice. It seems logical to us that such technique is as sound as the well-established practice of sustaining a plaintiff's complaint upon any theory the facts may justify.

The main question for decision is, Who is entitled to the office of treasurer of the firemen's relief association? This question, in turn, is dependent upon the preliminary question of, Who are the eligible members of the association?

Chapter 391, Revised Codes, covers the subject of fire departments and firemen's disability fund. It is alleged in relator's petition that the city of Kalispell has a fire department, established as authorized by this Chapter, and also a fireman's disability fund and relief association. Authority is granted by section 5129, Revised Codes, to the confirmed members of a fire department, or departments, together with the volunteer fire departments recognized by the city or town council in each incorporated city or town, to form themselves into a local relief association. Sections 5123, 5132, 5133, 5134 and 5135, set up the machinery for the disposition of the association funds for pensions of various sorts and disability payments as specifically set out.

A careful reading of the enumerated sections shows clearly that the expressed intent and spirit of the law is to benefit the members of organized fire departments, whether that membership be a paid one or merely volunteer. It apparently may be either or both. (Secs. 5129, 5117, Rev. Codes.) Section 5130 provides in part: "No one serving as a substitute or on probation, nor any person who has not been confirmed a member

of an organized fire department is eligible for membership in the relief association." From this language it is clear that to participate in the affairs and enjoy the benefits of the relief association, a person would have to be a confirmed member of an organized fire department, or at least a member of a volunteer department recognized by the city or town council. (Secs. 5129, 5117, Rev. Codes.) It follows from this that a member of a department abolished by the city government could no longer qualify as an eligible member of the relief association.

No argument had been advanced as to the city's authority to abolish an existing volunteer department, and it would seem from section 5140 that no serious argument could be made along that line. That section provides in part: "In case a paid fire department is established in any city or town, the council may by ordinance provide for the maintenance of the same, and the employment of the officers and employees thereof." This section, when considered along with section 5116.1, relating to permissible tax levies for supporting volunteer fire departments, would seem clearly to imply that a city government could abolish its volunteer department when in its judgment a paid department should be established in lieu thereof. (See, also, sec. 5109, as amended by Chapter 4, Session Laws of 1937, and sec. 5110.)

Respondents seem to question only the authority and intent ▉ of the city to abolish or destroy the membership of a volunteer member in the firemen's association. We see no merit in this objection. To sustain that contention would be tantamount to saying that a member of such association had a vested right in the funds administered by the relief association. Such is not the law, nor can it be deduced that it was the intent or purpose of the statutes under consideration. Sections 5123, 5132, 5134 and 5135, relating to the disposition of funds of the association, all are predicated upon the premise that such benefits accrue only to active members of either paid or volunteer departments on the happening of certain events. The construction contended for by respondents not only does violence to the plain meaning of the statutes, but also would defeat the purpose for which such relief associations are organized, to-wit: protection of active

members injured in service or otherwise within the benefits conferred by the association.

As stated in the note preceding the exhaustive annotation in ██ 54 A. L. R. 943: "The unquestioned rule is that a pension granted by the public authorities is not a contractual obligation, but a gratuitous allowance in the continuance of which the pensioner has no vested right; and that pension is accordingly terminable at the will of the grantor." (See, also, the supplemental list of annotated cases in 98 A. L. R. 505; 43 C. J., sec. 1492 et seq., p. 842.) The legislature declared that paid firemen and volunteer firemen together could form a relief association (sec. 5129, Rev. Codes), but it also prescribed a limitation on the period of eligibility for membership in that association, based upon active service either as a paid fireman or volunteer (sec. 5130).

Finally, in further substantiation of the conclusion we have announced, we observe a provision in the relief association's articles of incorporation on file in the office of the secretary of state, and of which we may take judicial notice (*Conley* v. *Johnson,* 101 Mont. 376, 54 Pac. (2d) 585), concerning qualifications of members. We quote provision 4 as follows: "That the qualifications for membership in such association [is] that the member shall be at the time of his election, a paid active and/or volunteer fireman in the Fire Department of the City of Kalispell, Montana, and that his membership in said association shall expire immediately upon his resignation, withdrawal, or expulsion from the Fire Department of said city." When the volunteer department was abolished by ordinance, an expulsion of the particular members thereof occurred just as effectively as if each volunteer had been expelled for misconduct or some other reason.

Having determined that the volunteer members of the abolished department were not eligible members of the relief association, it necessarily follows that their election was invalid, and therefore relator, the treasurer elected by eligible members of the relief association, is entitled to the office, and to the possession of the funds of the association.

Judgment reversed and cause remanded with instruction to the district court to proceed in accordance with this opinion.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON concur.

Rehearing denied March 6, 1939.