CLARKE, RESPONDENT, v. IRELAND ET AL, APPELLANTS
No. 8790.
Submitted September 27, 1948.   Decided November 29, 1948.
199 Pac. (2d) 965.

R. V. Bottomly, Atty. Gen., and Clarence Hanley, Alfred F. Dougherty, M. Baxter Larson, and Curtis C. Cook, Asst. Attys. Gen., for appellants. Mr. Hanley and Mr. Larson argued the cause orally.

Rankin & Acher, of Helena, for respondent. Mr. Rankin and Mr. Acher argued the cause orally.

MR. JUSTICE METCALF:

Florence J. Clarke, the plaintiff, during the school year 1936-1937 was a public high school teacher in Montana. In 1937 the Twenty-fifth Legislative Assembly enacted Chapter 87, Laws of 1937, the Teachers' Retirement Act. Section 4(1) (a) of that Act provided that ''All persons who were teachers in the public schools of the State during the school year nineteen hundred and thirty-six to nineteen hundred and thirty-seven, and who continue to be teachers shall become members as of the date of establishment, except that any such teacher may notify the board on or before the thirtieth day of November, nineteen hundred and thirty-seven, in such form as the board may prescribe, that he does not desire to become a member, and in such case the board shall exclude him from the membership.''

The plaintiff did not file the notification and therefore became a member of the teachers' retirement system. The plaintiff continued to teach in the public schools of the state until

September 1, 1945, at which time she resigned. Throughout the period from September 1, 1937, to September 1, 1945, five per cent. of the plaintiff's "earnable compensation" was deducted from her salary which is the contribution required from each member by section 8 of Chapter 87, Laws of 1937.

On September 1, 1945, when the plaintiff resigned and ceased to be a teacher in the public schools, she had not reached an age that entitled her to be eligible for retirement benefits, nor was she entitled to disability benefits. Therefore she applied for withdrawal of all amounts standing to her credit in the annuity savings fund created by the Teachers' Retirement Act, together with three-fourths of the accrued interest thereon.

In her application for withdrawal of three-fourths of the accrued interest, the plaintiff was relying upon the provisions of Chapter 87, Laws of 1937, section 1 (12) and section 6 (8) (a). Section 6(8) (a) of the 1937 law declared that "A member who withdraws from service or ceases to be a teacher for any cause other than death or retirement shall be paid such part of the accumulated contributions standing to the credit of his individual account in the annuity savings fund as he shall demand."

Section 1(12) defined "accumulated contributions" as "the sum of all the amounts deducted from the compensation of a member and credited to his individual account in the annuity savings fund, together with interest. Regular interest shall be computed and allowed on such total or part thereof when used to provide a benefit at the time of retirement. Interest at the rate of three-fourths the regular rate shall be computed and paid on such total amounts or part thereof when withdrawn for any other purpose."

Therefore when "accumulated contributions" were demanded and withdrawn for any purpose other than retirement, interest at three-fourths the regular rate was to be computed and paid to the withdrawing member.

Chapter 137, section 1(12), Laws of 1945, amended the definition of "accumulated contributions" to mean "the sum of all the amounts deducted from the compensation of a member * * *

and credited to his individual account in the annuity savings fund, together with interest. Regular interest shall be computed and allowed to provide a benefit at the time of retirement. Interest at the rate of three-fourths the regular rate shall be computed and credited to the pension accumulation fund when withdrawn for any other purpose subsequent to July 1, 1945.'' The effect of this amendment was to pay three-fourths of the interest to the pension accumulation fund instead of paying it to the withdrawing member. The 1945 amendment to section 6(8) (a) of Chapter 87 makes this explicit. ''A member who withdraws from service or ceases to be a teacher for any cause other than death or retirement shall be paid only the amount contributed by the member to his annuity savings account * * *.'' Chapt. 137, Laws of 1945, p. 260.

The defendants offered to refund to the plaintiff the amount of her contributions but refused to pay her the three-fourths of the regular rate of interest. The plaintiff contended that she was entitled to the interest that had actually been credited to her account under the 1937 Act and instituted this action for a declaratory judgment. The defendants interposed a general demurrer and when their demurrer was overruled, elected to stand on the demurrer and refused to plead further. Judgment was entered for the plaintiff and from that judgment the defendants have appealed.

The material facts are not in dispute. It is conceded that under the 1937 law prior to the amendments of 1945, the plaintiff would be entitled to withdraw her contributions together with the three-quarters of the interest. If the 1937 statute is applicable the plaintiff will prevail. However if the 1945 amendment is valid and changed the rights of this plaintiff, then the defendants will prevail.

Prior to the enactment of the present teachers' retirement law, Chapter 87, Laws of 1937, this state had a public school teachers' retirement plan in operation under the terms of Chapter 95, Laws of 1915. Secs. 1113-1132, Rev. Codes of 1935.

The validity of Chapter 95, Laws of 1915, was attacked in the

case of Trumper v. School District No. 55, 55 Mont. 90, 173 Pac. 946. The pertinent portions of that law insofar as the present case is concerned were as follows: Two funds were created, a "Public School Teachers' Retirement Salary Fund," and the "Public School Teachers' Permanent Fund." There was to be deducted from the salary of every teacher the sum of one dollar per month to be placed in the "permanent fund." Other money in the permanent fund included income and interest, donations, legacies, gifts or bequests and appropriations made by the state legislature. The "Retirement Salary Fund" consisted of money transferred from the "permanent fund." Then followed certain provisions for retirement and retirement benefits and the conditions under which a school teacher would become entitled to such benefits.

The attack made on the law was that this was taxation for other than a public purpose, a taking of property without due process of law, and a denial of equal protection of the law. The court said, "The legal relation of the state through its several boards of school trustees with the teachers employed by it is one of contract." 55 Mont. at page 93, 173 Pac. at page 947. Then this court pointed out that since the question was settled by contract between the teacher and the local school board, no question of taxation was involved. Nor was there any taking of property because the teacher's contract provided for the deduction of one dollar per month. On the question of denial of equal protection of the law it was asserted that some teachers were compelled to join the system and with others it was optional. This grew out of a provision making the one dollar per month deduction mandatory on teachers joining the system after the approval of the Act and permissive as to teachers employed in the public schools of Montana prior to January 1, 1916. But again this court declared that the deductions resulted from the contractual relation between the teacher and the school district.

In State ex rel. Casey v. Brewer, 107 Mont. 550, 88 Pac. (2d) 49, 53, a question of the rights of a member of a volunteer fire department in a pension fund was before this court. There we

quoted a rule appearing in 54 A. L. R. 943: "The unquestioned rule is that a pension granted by the public authorities is not a contractual obligation, but a gratuitous allowance in the continuance of which the pensioner has no vested right; and that pension is accordingly terminable at the will of the grantor."

In similar language the same rule is stated in 40 Am. Jur., "Pensions," section 24, page 981, and in extensive annotations in 98 A. L. R. 505; 112 A. L. R. 1009; 137 A. L. R. 249. This rule is based on the concept of a pension as largesse donated to faithful public servants by a grateful and beneficent sovereign. And since the pension is in the nature of a gratuity when given it can be withdrawn by the sovereign without violation of fundamental rights.

"In earlier years, the common understanding of a 'pension' was that it was a gratuity or bounty 'springing from the appreciation and graciousness of the sovereign,' granted for services previously rendered and which at the time they were rendered gave rise to no legal obligation, the payment of which might be given or withheld at pleasure. (Citing many cases.)" Talbott v. Independent School Dist. of Des Moines, 230 Iowa 949, 299 N. W. 556, 560, 137 A. L. R. 234.

Many pensions and pension laws are still in the category of gratuitous payments. But the modern retirement systems based on annuity contracts are very different in operation and in principle from the early pension laws providing for gratuities to superannuated employees.

The annotation in 137 A. L. R. 249, says that the traditional rule (that above quoted in the Casey case from 54 A. L. R. 943) is still adhered to "but the number of cases in which its application has been deemed proper has diminished, in comparison with those upholding, as vested, at least in a limited sense, rights of beneficiaries under various retirement pay and other plans similar in nature to adjusted compensation and insurance features. The growing number of such cases is, of course, due to the adoption and extension of such systems to greater numbers and

groups of employees in all branches of public and semi-public service.''

McQuillin in Revised Vol. 2, Municipal Corporations, 2d Ed., section 529, page 274, says: ''A pension has been distinguished from an annuity on the ground that the former is a payment derived from an appropriation made by the city while the latter is a payment from contributions made by the employee to a fund of which he is a member. Nevertheless, such a fund is frequently referred to as a pension fund and payments therefrom as pensions. It can well be understood that the origin of the sum from which the payments are made may determine the rights of the employee in many circumstances, and a great deal of the apparent conflict in the opinions disappears when considered in the lights of such distinction. On the other hand, frequent failure of the courts to use any distinguishing terminology has undoubtedly resulted in conflicting opinions.''

Some of the bases for determining whether a fund is a pension or annuity fund are the amount of contribution, and whether the deductions are compulsory or voluntary.

The question as to whether the contributions were voluntary or compulsory was discussed in Raines v. Board of Trustees, 365 Ill. 610, 7 N. E. (2d) 489, 491. The Illinois court used the same definition of pension we used in the fireman case. State ex rel. Casey v. Brewer, supra. The Illinois court then discussed the effect of compulsory contributions on the character of a pension. Compulsory payments ''into the fund are not in fact payments by the officer or employee, and the employment is accepted with knowledge that certain amounts will be deducted each month and placed in the pension fund; that the money is not first segregated from the public fund so as to become private property and then turned over to the pension fund, but is set aside or transferred from one public fund to another, and remains public money over which the person from whose salary it is deducted has no control, and in which he has no right.''

That is similar to this court's language in Trumper v. School District No. 55, supra: ''Though called part of the officer's com-

pensation, he never received it or controlled it; nor could he prevent its appropriation to the fund in question. He had no such power * * * over it as always accompanies ownership of property.'' 55 Mont. at page 94, 173 Pac. at page 947.

And the Illinois court has held that firemen's and policemen's compulsory contributions go into a pension fund and the individual fireman has no vested right in the fund. We have held the same in State ex rel. Casey v. Brewer, supra.

The distinguishing feature between such cases is the difference between voluntary contributions to an annuity fund and compulsory contributions to a pension fund. And the test is not whether the deduction was ever paid to the member and then returned but whether the contributor had a power to elect whether the deduction was authorized or not. If the contributor chooses to participate in the retirement program and directs that his contributions be deducted from his salary, that is as certainly a voluntary contribution as if he had actually received the money and paid it back to the state. Raines v. Board of Trustees, supra; People ex rel. Judges' Retirement System v. Wright, 379 Ill. 328, 40 N. E. (2d) 719, 723; Ridgley v. Board of Trustee, etc., 371 Ill. 409, 21 N. E. (2d) 286.

The courts have also recognized the difference between a pension fund into which the potential beneficiaries only make token payments and the bulk of which is made up by legislative appropriations, and annuity funds whereby the prospective beneficiary makes payments on an insurance basis computed by experienced actuaries and receives benefits in direct proportion to the payments made.

The present Teachers' Retirement Act (Chapt. 87, Laws of 1937) is one providing for payments of annuity rather than a pension. At least the annuity savings fund is one to which the teachers contribute a percentage of their earnings to provide for their annuities. The teachers make contributions in proportion to their earnings and are entitled to the retirement pay that such deposits would purchase. This plaintiff voluntarily consented that the deductions provided by statute

be made from her earnings. This sort of retirement fund maintained by voluntary contributions from a public employee creates a contractual annuity. The rights which the teacher acquires in the fund are contractual rights, "the terms of which are ascertained by reference to the statute." Raines v. Board of Trustees, supra.

As was said in Ball v. Board of Trustees, etc., 71 N. J. L. 64, 58 A. 111, 112, "The annuity is not a pension granted by the state * * *. The fund is the result of contributions by the teachers who elect to take part in the scheme, and the rights of the contributors must necessarily depend upon the agreement under which they entered into the scheme."

The terms of that agreement include section 6(8) (a) and section 1(12) of Chapter 87, Laws of 1937, permitting a withdrawing teacher to receive three-fourths of the regular rate of interest credited to that teacher's individual account in the annuity savings fund. These sections of the statute become part of the teacher's contract. This contract between the individual teacher on the one hand and the school district and the state on the other is entitled to the same protection of the Federal and Montana Constitution offered a contract between individuals. State ex rel. State Savings Bank v. Barrett, 25 Mont. 112, 63 Pac. 1030.

Article I, section 10, of the Constitution of the United States provides: "No state shall * * * pass any * * * Law impairing the Obligation of Contracts."

Article III, section 11, of the Constitution of Montana provides: "No * * * law impairing the obligation of contracts * * * shall be passed by the legislative assembly."

In attempting to change the terms of a contract and deprive the contributing teacher of the interest she was entitled to under the contract, the Montana legislature violated the foregoing constitutional provisions. That part of Chapter 137, Laws of 1945, impairing this plaintiff's contractual rights is null and void as violative of the Constitution of the United States and of the State of Montana.

It is contended by the state that even if the law cannot be given retrospective operation it is valid as to all contributions that were made after its enactment and this plaintiff is not entitled to any interest on her accumulated contributions to the annuity savings fund from and after the effective date of the 1945 amendment.

It is true that the public interest in retirement funds and retirement programs for employees and public officers alike demands that those in charge of the funds be constantly watchful of the integrity of the fund. Changes in interest rates, increase in the life span of the employees, experience in the operation of the retirement program, may require changes to insure that all the members of the system have the benefits which they have contracted for. Great latitude should be permitted the legislature in making alterations to strengthen the system. But such changes are subject to the above constitutional limitations. If the legislature is convinced of the need to safeguard and protect the fiscal base of the retirement system and plans changes to maintain the solvency of the system it must legislate within the framework of the Constitution. The 1945 legislation arbitrarily alters the terms of the contract without giving the plaintiff the opportunity to accept the altered terms or withdraw from the system. As enacted the legislation was invalid as applied to accumulated contributions made after the effective date of the Act as well as before such effective date.

The judgment is affirmed.

Mr. Chief Justice Adair and Associate Justices Choate, Gibson and Angstman concur.