MATHEWS v. BD. OF TRUSTEES OF ASHEVILLE POLICEMEN'S FUND

[96 N.C. App. 186 (1989)]

No error.

Judges WELLS and JOHNSON concur.

---

GROVER CHARLES MATHEWS, TROY EVERETTE McHONE, ROBERT EU-
GENE SIMMONS, PLAINTIFFS, AND JAY HILL BREEDLOVE, INTERVENOR
v. BOARD OF TRUSTEES OF THE ASHEVILLE POLICEMEN'S PENSION
AND DISABILITY FUND, THE CITY OF ASHEVILLE, DEFENDANTS, AND
JOHN E. PIPITONE, INTERVENOR

No. 8828SC892

(Filed 7 November 1989)

**Retirement Systems § 2 (NCI3d)— municipal system funds trans-
ferred to State system—transfer sanctioned by statute—
plaintiffs' complaint against State Retirement System**

> In an action for an injunction to prevent the transfer
> of assets of the Asheville Policemen's Pension and Disability
> Fund into the State Retirement System, plaintiffs' argument
> that the terms of a pension plan may not be amended when
> its members are voluntary participants therein was not ger-
> mane to the real issue before the court, since that argument
> would apply to the dissolution in 1986 of the Law Enforcement
> Officers' Benefit and Retirement Fund to which plaintiffs made
> voluntary contributions, but plaintiffs did not contest the
> transfer of their LEO contributions into the State Retirement
> System; defendant city's decision to terminate the Asheville
> Policemen's Pension and Disability Fund in favor of participa-
> tion in the State System was an action clearly sanctioned
> by statute, N.C.G.S. § 128-25; and if plaintiffs' right to receive
> two pensions was erased by the merger, plaintiffs' complaint
> was properly with the State Retirement System and not with
> defendants.

**Am Jur 2d, Pensions and Retirement Funds §§ 1001 et seq.**

APPEAL by plaintiffs from judgment entered 8 April 1988 in
BUNCOMBE County Superior Court by *Judge Robert D. Lewis.*
Heard in the Court of Appeals 16 March 1989.

MATHEWS v. BD. OF TRUSTEES OF ASHEVILLE POLICEMEN'S FUND

[96 N.C. App. 186 (1989)]

*Roberts, Stevens & Cogburn, P.A., by Max O. Cogburn and Glenn S. Gentry, for plaintiff-appellants.*

*William F. Slawter and Sarah Patterson Brison for defendant-appellees.*

BECTON, Judge.

This is an action in which plaintiffs seek an injunction preventing defendant Board of Trustees of the Asheville Policemen's Pension and Disability Fund from transferring assets of the Fund into a State-administered pension system. Plaintiffs further seek a declaration of their rights with respect to this transfer. On 31 December 1986, the judge issued a temporary restraining order forbidding the Trustees from merging the Fund with the State System. On 8 January 1987, John E. Pipitone intervened as a party defendant. On 9 January 1987, defendant City of Asheville consented to an order making it a party defendant. That same day, the judge denied plaintiffs' motion for a preliminary injunction and dissolved the restraining order. Jay Hill Breedlove intervened as a plaintiff in this action on 24 February 1987. On 8 April 1988, the judge entered summary judgment in favor of defendants. Plaintiffs appeal, and we affirm.

I

Plaintiffs are members of the Asheville Police Department. By virtue of their employment, each automatically participated in the Asheville Policemen's Pension and Disability Fund ("the Asheville Fund"), a fund created by Chapter 242 of the Public-Local Laws of 1939. Five percent of each plaintiff's monthly salary was deducted from his paycheck and put into this Fund. Each of these plaintiffs, in addition, voluntarily participated in the Law Enforcement Officers' Benefit and Retirement Fund ("LEO"), a separate pension system providing coverage in the event of death, disability, or retirement. Another six percent of each plaintiff's monthly salary was deducted and forwarded to LEO by defendant City of Asheville.

In January 1986, the legislature, enacting N.C. Gen. Stat. Sec. 143-166.70, directed that all funds previously contributed to LEO be transferred to the North Carolina Governmental Employees' Retirement System ("the State Retirement System"), a pension fund administered by the State. Plaintiffs' funds in LEO were thus transferred into the State Retirement System. Plaintiffs continued

to contribute to the Asheville Fund and thus continued to participate in two separate pension systems.

On 3 December 1986, more than 60% of the Asheville police officers eligible to vote elected to participate in the State Retirement System. Plaintiffs voted against participating. The affirmative vote authorized the merging of the Asheville Fund with the State Retirement System and the placement of Fund participants under the jurisdiction of the State System. Prior to the vote, defendant Asheville City Council guaranteed to Fund members who had previously contributed to LEO "payments in the amount of their accrued benefits under LEO . . . ."

On 9 December 1986 the City Council adopted a resolution expressing its desire to "assure the members of the Asheville [Fund] that no such member shall ever receive a benefit upon retirement or disability under [the State Retirement System] in an amount less than that which they would have been entitled to under the Asheville [Fund]." The Council resolved that Asheville Fund members be paid any supplemental amounts necessary to compensate them for any difference between the amount of monthly benefits to which the State Retirement System would entitle them versus the amounts they would have received from the Asheville Fund. The Council further resolved to make to the former LEO members payments representing the present value of their accrued LEO/State Retirement System benefits. Finally, the Council resolved to participate in the State Retirement System and to transfer the assets and liabilities of the Asheville Fund to that System.

Plaintiffs instituted this action seeking an injunction to prevent the merger of the Asheville Fund with the State Retirement System. On 9 January 1987, a temporary restraining order was lifted, and the Board of Trustees transferred the Asheville Fund into the State System. The trial judge, finding that "there is no genuine issue of material fact at this time," subsequently awarded summary judgment to defendants, and plaintiffs appealed.

II

Plaintiffs contend that the trial judge erred by failing to grant their motion for summary judgment and by entering judgment for defendants. Prior to the transfer of the Asheville Fund into the State Retirement System, plaintiffs maintain that they were entitled to receive two pensions—one from the Asheville Fund

and the other from the State System. Plaintiffs assert that the City, through its resolutions, has guaranteed them only that they will not receive an amount under the Retirement System that is less than the benefits they would have received from the Asheville Fund. This guarantee, plaintiffs argue, does not mean that they will receive the same amounts they would have recovered had they continued to participate in *both* the Retirement System and the Asheville Fund.

Plaintiffs assert that the City's resolution to pay to them the present value of the benefits they accrued under LEO does not protect their interests in that "[t]he 'buy out' figures are based on unreasonable and arbitrary assumptions with regard to the future salaries of Plaintiffs, interest and inflation rate . . . . [and] . . . also ignore the immediate tax consequences to each Plaintiff." Had plaintiffs voluntarily withdrawn from LEO, they argue, any amounts they would have received would have been exempted from State or municipal tax under N.C. Gen. Stat. Sec. 143-166(q) (1974 Replacement). The payments from the City, however, are explicitly to be treated "as compensation from the City for tax purposes."

Plaintiffs also contend that they have been placed in a position that is inferior to those police officers who declined to participate in LEO in the first place and, instead, placed six percent of their salaries in other investments. Plaintiff Grover Mathews asserts, for example, that had he invested six percent of his salary at the legal interest rate of eight percent, *see* N.C. Gen. Stat. Sec. 24-1 (1986), his return after eleven years of contributions would have been $14,520.83. (Mr. Mathews asserts that this figure, in reality, would have been higher because the average rate of return during the relevant time period exceeded eight percent; in addition, the interest income could have been compounded.) The City of Asheville, conversely, has offered him $13,644.00, all of it treated as taxable income.

Finally, plaintiffs allege that the City's attempt to pay them the value of their accrued LEO benefits ignores the death and disability components of plaintiffs' previously vested LEO/Retirement System rights. They contend the City's plan presumes that all plaintiffs will continue to work until retirement age. However, the City has made no effort to provide any guarantees to plaintiffs in the event of death or disability, thus eliminating a significant

component of plaintiffs' rights without compensation or consideration for the destruction of those rights.

Plaintiffs' argument, essentially, is that the terms of a pension plan may not be amended when its members are *voluntary* participants therein. They contend that every jurisdiction which has addressed the distinction between mandatory and voluntary participation has agreed that "benefits provided for employees under a voluntary pension or retirement plan created by an act of the legislature may not be modified or reduced by subsequent amendatory legislation for the reason that those electing to participate in such voluntary plans acquire vested rights of contract to the benefits provided therein upon acceptance of the plan, which rights may not be impaired by subsequent amendments to the act." *State v. City of Jacksonville Beach*, 142 So.2d 349, 353 (Fla. Dist. Ct. App. 1962); *see also Smith v. City of Dothan*, 188 So.2d 532 (Ala. 1966); *Bardens v. Bd. of Trustees*, 22 Ill. 2d 56, 174 N.E.2d 168 (1961); *Clarke v. Ireland*, 199 P.2d 965 (Mont. 1948); *Ball v. Bd. of Trustees*, 71 N.J.L. 64, 58 A. 111 (1904).

The logic of the Florida court seems sound, and, indeed, we are not indifferent to plaintiffs' claims that the merger of the Asheville Fund with the Retirement System may damage plaintiffs' interests. Ultimately, however, we are in agreement with defendants that any impairment of plaintiffs' contractual rights is not the consequence of defendants' actions. If plaintiffs' right to receive two pensions has been erased by the merger, plaintiffs' complaint is properly with the State Retirement System and not with defendants. We ground our holding on the clear statutory authorization for the kind of merger that occurred in this case.

The General Assembly has permitted the dissolution of "any retirement pension or annuity fund or system of any county, city, or town" whenever 60% of the local fund's members elect to join the State System. N.C. Gen. Stat. Sec. 128-25 (1986). This provision has been in effect since the creation of the State System. *See* North Carolina Code of 1939 (Michie), Sec. 3212(5)(2). The record before us indicates, and the parties agree, that more than 60% of the members of the Asheville Fund voted to join the State Retirement System. The City Council's subsequent resolution to participate in the State System, and to dissolve the Asheville Fund thereby, accorded with the procedure prescribed by our statutes. In short, the City's decision to terminate the Fund in favor of

participation in the State System was an action clearly sanctioned by the General Assembly.

We have not turned a deaf ear to plaintiffs' assertions that the City has failed to adequately compensate them for their accrued benefits in LEO. The briefs of both parties and the record offer exhaustive analysis on the question whether plaintiffs have or have not been damaged by the Asheville Fund-Retirement System merger. Defendants apparently concede that the State Retirement System, although it has received contributions for two different pensions— LEO and the Asheville Fund—will provide these plaintiffs with only one pension. In the final analysis, however, we have concluded that this question is inapposite to the real question before us.

Plaintiffs voluntarily participated in LEO; their participation in the Asheville Fund was mandatory. *See* Act of Mar. 25, 1955, ch. 322, Sec. 1(a), N.C. Sess. Laws 273. Plaintiffs' argument, summarized above, that the terms of a voluntary pension plan may not be modified by later amendment is thus not germane to their compulsory participation in the Asheville Fund. LEO, the fund in which plaintiffs did become voluntary members, ceased to exist in 1986 after the legislature repealed N.C. Gen. Stat. Sec. 143-166 and enacted N.C. Gen. Stat. Sec. 143-166.70. Plaintiffs did not contest the transfer of their LEO contributions into the State Retirement System at that time, presumably because they continued to contribute to two pension systems (the Asheville Fund and the State System). It is at the present time, following the merger of the Asheville Fund with the State System, that plaintiffs complain their right to receive two pensions has been destroyed by the City of Asheville. If, however, it is true that the State System will provide only a single pension to plaintiffs, then it is the State System, and not defendants, who have arguably impaired plaintiffs' contractual rights.

We express no opinion as to whether the City's offer of compensation is adequate recompense for plaintiffs' rights under LEO. If, *arguendo*, it is not, we believe that plaintiffs' recourse is against the State Retirement System and not defendants.

### III

Plaintiffs next argue that the trial judge erred by dismissing their action when he had jurisdiction to issue a declaratory judgment concerning the rights of the parties. If this action were ripe

for declaratory judgment, however, the order of the trial judge lifting the temporary restraining order and allowing the transfer of the Asheville Fund into the State Retirement System is tantamount to a declaration in favor of defendants' position. We agree with defendants that "[h]ad the trial court determined that the [plaintiffs] had the right to prevent the transfer [of the Asheville Fund assets] to the [State System], the temporary restraining order would not have been dissolved, and the injunctive relief would have been maintained." For this reason, we overrule this assignment of error.

IV

For the foregoing reasons, the judgment in favor of defendants is

Affirmed.

Judges PARKER and ORR concur.