OPINION OF THE COURT
Joseph P. Kuszynski, J.
Claimants, Stephen Joseph Mervak and Catherine Mervak, Harry and Lois Gibbs, individually and as parents and natural guardians of Michael Gibbs and Melissa Gibbs, infants, on behalf of themselves and hundreds of claimants who have filed notices of claim under section 50-e of the General Municipal Law against the City of Niagara Falls, New York, the County of Niagara, New York, and the Board of Education of the City of Niagara Falls, New York, seek in this Special Term proceeding a declaration that the notices of claim have been timely filed. In the alternative, petitioners seek permission pursuant to subdivision 5 of section 50-e of the General Municipal Law for late filing nunc pro tunc.
Involved here are about 900 environmental disaster claims filed on behalf of infants, disabled adults and estates of deceased persons wherein damages are sought in the aggregate in excess of $2,500,000,000 for personal injuries, wrongful deaths and diminishing real estate values. Claimants included in this petition are present residents, former residents, as well as transients who had only visited the area commonly known as the "Love Canal”.
In their moving papers claimants state, by way of historical background, that the "Love Canal” is an aborted canal project in the City of Niagara Falls, New York, which was abandoned in 1910. In 1920, the partially excavated channel began to be used as a disposal site for highly toxic chemical waste from local industry and as a municipal dump site by the city. About 1953, the canal was completely filled and sold to the Board of Education of the City of Niagara Falls for $1 by the antecedent companies of the present Hooker Chemical Company.
The respondent school board erected an elementary school and a playground upon the site. The balance was sold and many homes were thereafter built in this area. Claimants *70 recite that as of mid-1978, the ownership of the location was shared by the board, the city and homeowners.
Claimants further state that in early 1978, the Federal and State Governments began investigating the causes of an abnormally high number of illnesses in the "Love Canal” neighborhood and on August 2, 1978 the New York State Commissioner of Health issued an order, declaring the existence of an emergency in the area contiguous to the canal between 97th and 99th Streets.
The commissioner based his order upon findings that toxic chemicals had leaked into the basements of homes bordering the canal, that children in the 99th Street school were being exposed to toxic chemical waste and that there existed abnormally high levels of spontaneous abortion and congenitally malformed babies born. The commissioner also declared that seven chemicals found had cancer producing qualities in animals and the eighth was a known human carcinogen.
On February 8, 1979 the State Commissioner of Health issued a further supplemental order expanding the area of danger beyond the original boundary. He ordered all families with pregnant females or with children under two years of age to be relocated from the area between 93rd and 103rd Streets. The commissioner also declared that one of the most deadly substances known to man, "dioxin”, was present in the canal and that it had spread to surrounding areas via underground channels.
Counsel for the claimants have consolidated the applications into one motion on behalf of all their clients maintaining "the claimants herein are all similarly situated and have filed identical claims, there was no purpose for filing separate motions for each.” Claimants cite August 2, 1978, the date the commissioner declared the emergency, as being the date when their causes of action accrued pointing out that, "Until then neither [the claimants] nor their physicians knew the cause of their injuries.” Claimants urge upon this court that August 2, 1978 is therefore day "zero” when the 90-day requirement concerning the serving of notices of claim upon respondents begins to run.
The motion was argued July 20, 1979. Thereafter briefs and memoranda were submitted, the last submission being dated September 18, 1979.
Prefactory to any discussion of the conflicting assertions, it is necessary to underscore that this aspect of the litigation by *71 the "Love Canal” victims concerns only respondents which are public corporations. Actions against such respondents are statutorily defined and subject to time limitations of 15 months in the maximum as to both, the fulfillment of the requirement to file a notice of claim including extensions as a prerequisite to commencement of a suit founded upon tort, and the commencement of the action itself.
Several issues are raised by claimants’ application to this court. The first is whether a single notice of claim for personal injuries suffices on behalf of the many claimants under the circumstances present here in this environmental tort situation. The second is whether in a class action the issues can be determined concerning the timeliness of the notices of claim as well as the requests for permission, if the notices were untimely filed, to file out of time nunc pro tunc. The third issue is, if a class action cannot be maintained under section 50-e of the General Municipal Law due to the circumstances here present, but on an individual case-by-case basis, when must the questions of timeliness and permission for late filing be resolved — at the inception of the suits in fact-finding hearings or by deferring these issues to the trial court.
Section 50-e (subd 1, par [a]) of the General Municipal Law imposes a condition precedent to -a suit being brought against a public corporation requiring a notice "within ninety days after the claim arises”, or else barring such claims. The one exception in the statute is subdivision 5 which governs late filing of a notice of claim.
"5. Application for leave to serve a late notice.
"Upon application, the court, in its discretion, may extend the time to serve a notice of claim specified in paragraph (a) of subdivision one. The extension shall not exceed the time limited for the commencement of an action by the claimant against the public corporation. In determining whether to grant the extension, the court shall consider, in particular, whether the public corporation or its attorney or its insurance carrier acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one or within a reasonable time thereafter. The court shall also consider all other relevant facts and circumstances, including: whether the claimant was an infant, or mentally or physically incapacitated, or died before the time limited for service of the notice of claim; whether the claimant failed to serve a timely notice of claim by reason of his justifiable reliance upon *72 settlement representations made by an authorized representative of the public corporation or its insurance carrier; whether the claimant in serving a notice of claim made an excusable error concerning the identity of the public corporation against which the claim should be asserted; and whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits.
"An application for leave to serve a late notice shall not be denied on the ground that it was made after commencement of an action against the public corporation.”
For claims arising after the effective date of the amendment in 1976 to subdivisions 5 and 7 of section 50-e of the General Municipal Law, the outside time limit is now identical as to both the filing of claims and the commencement of an action, viz., 1 year and 90 days.
The scheme of the statute is such that it does not provide for an automatic tolling of the time but leaves the determination whether an extension of time is to be granted to a "delineated judicial discretion”. (Matter of Beary v City of Rye, 44 NY2d 398, 412.)
Claimants state in their application that a notice of claim was served upon respondents on October 30, 1978 on behalf of all the litigants in a class action which included the identical allegations contained in the claims now before the court. This is the premise upon which claimants base their assertion that all notices as filed should be considered timely. It appears that, subsequently, individual notices of claim were served on October 30, 1978 through July 16, 1979, the date when their petition was placed before the court.
Claimants submit "the circumstances surrounding these claims, are practically unique as opposed to the normal tort claim, [since] no date of personal injury can be known or alleged.”
Respondents contend, on the other hand, that there are some 900 separate personal injury claims before this court, each having a different starting point. They resist claimants’ stance that August 2, 1978, the proclamation date of an emergency by the State Commissioner of Health, marks the beginning point of the 90-day requirement. They contend a question of fact exists when each individual claim arose, because the date of the accrual of an action must be measured from the date of injury and not the date of discovery. Respondents maintain that the "claimants have dissimilar unique *73 injuries occurring at dissimilar times and dissimilar places with totally dissimilar exposure.”
They further argue that the statute provides that a public corporation be provided in the notice of claim with the specifics of an injury sustained by a claimant. Respondents question the sufficiency of the notices of claim because, "Nowhere * * * do the claimants allege or set forth the respective times of the happening or events upon which their respective claims are based.”
In essence, claimants are seeking in this proceeding a declaratory judgment validating all notices of claim encompassed by this petition.
CPLR 901 allows for a class action where a question of law or fact common to the class predominates over any question affecting only individual members. The specific statutory requirements of section 50-e of the General Municipal Law and its subdivisions, as structured, preclude class actions arising from exposure to deleterious chemical wastes.
Unlike the situation of an accident, disaster or a holocaust which brings about an injury, with a definite starting point from which to measure the "accrual of a cause of action”, the claimed basis for the injuries here is exposure over a period of time to deadly toxic chemical wastes. The facts underlying these claims, filed on behalf of many, contain variables which prevent a blanket consideration of all the claims. Some claims concern residents who became ill years ago due to the exposure, while other claims were filed by recent visitors to the site who were there only once or twice. It is safe to say that no two claimants acquired the same disease at the same time. To establish a nexus between the exposure to toxic chemical wastes and the claimed injury, the following factors are to be considered: the commencement of exposure, the nature of the malady, and the date of diagnosis.
In claims for wrongful death, the filing of notices of claim is measured from the date of appointment of a representative of the estate, while the time to commence an action begins to run from the date of death. (EPTL 5-4.1; Erickson v Town of Henderson, 30 AD2d 282.) No dates of death nor the dates of the appointments of the legal representatives are before this court.
Impediments, such as incapacity due to infancy, physical or mental impairment, demise of a claimant and substitution of a representative of an estate in place of a claimant, provide *74 grounds for a court to exercise its statutorily provided for discretion and permit late filings if the incapacity played a significant role in bringing about the delay. (Goodson v New York City Tr. Auth., 66 AD2d 675; Williams v Town of Irondequoit, 59 AD2d 1049.)
Moreover, respondents resist the equation by claimants of the August 2, 1978 date when allegedly they first discovered the cause of their maladies with the accrual of the cause of action date as contemplated by the statute upon the ground of Thornton v Roosevelt Hosp. (47 NY2d 780). There the discovery concept was rejected by the Court of Appeals where chemicals were injected into plaintiff's body. It was held the controlling date for the accrual of the cause of action was the date when the chemicals were actually introduced into the body.
The question of "timeliness” of a notice of claim which alleges personal injuries is not a subject matter for class action but one which must be dealt with on an individual case-by-case basis since the injuries are not identical and not incurred at the same time.
When a claimant seeks to file late, nunc pro tunc, the statute imposes a requirement that a claimant set forth, among other facts, the reason for the delay, the specifics of the claimed injury, and under the circumstances here present, the time of the acquisition of the disease. This data is absent in the submissions by claimants before this court. A more detailed amplification of the underlying facts of a claim as to each claimant must be made in order that a proper examination may be made of its timeliness, and if untimely, to consider the granting of permission for late filing.
It is not possible to determine the dates of accrual of each of the claims filed, without the benefit of individual hearings on the circumstances concerning each claim.
With respect to notices of claim filed for dimunition of real estate values, it would appear that the claimant owners in this category are on a more solid footing in claiming August 2, 1978 as the date when their causes of action had accrued. There is little doubt that real estate values in the "Love Canal” area plumeted downward upon the commissioner’s declaration of an emergency.
While a court has great flexibility and discretion to grant extensions of time (Matter of Wemett v County of Onondaga, 64 AD2d 1025), this court is in a quandry at this stage of the *75 litigation because no claim as filed has been rejected by any of the respondents. At the time of the filing of the application now before this court, not a single action was commenced and, "The extension shall not exceed the time limited for the commencement of an action”. (General Municipal Law, § 50-e, subd 5; see Matter of Beary v City of Rye, 44 NY2d 398, supra.)
Respondents submit that the timeliness of the notices of claim can be challenged by them, in their answers only when and if, the claimants bring a lawsuit. (Miller v County of Putnam, 32 AD2d 827, affd 25 NY2d 664.)
Leave is extended to all claimants now before this court to enlarge the contents of their notices of claim and their application to this court to meet the objections regarding their sufficiency. Such corrective measures must be completed within the time frame of section 50-e of the General Municipal Law.
While this court sitting in Special Term may order an individual hearing on each notice of claim as to its timeliness, or propriety of a nunc pro tunc filing, this procedure will necessitate the taking of proof in the same areas which very likely would be repeated again on trial. An elimination of such duplicitous hearings would save expense for the litigants and prevent the overtaxing of the court facilities.
This court in its judgment, because of the uniqueness of the causes of action covered by the notices of claim, their awsome volume and complexity, reserves to the trial parts of this court after the actions are commenced, jurisdiction to determine the timeliness of each claim filed and the request for extension of time as provided for by statute, if it appears the notice of claim was not filed "within ninety [90] days after the claim arises”.