JAMES H. POU BAILEY, A. PILSTON GODWIN, HARRY L. UNDERWOOD, MELVIN T. MUNN, FRED BENSON, JAMES H. KLEU, JOSEPH GILMER BINKLEY, EULA G. BULLARD, MILDRED C. SEAWELL, EMILY B. JONES, SAMUEL T. ARRINGTON, JOHN W. CARTWRIGHT, DAVID L. BRITT, MATTIE E. LASSITER, PAUL LEE SALISBURY, JR., CHARLES S. MANOOCH, JR., ROY E. THOMPSON, AND CLYDE R. SHOOK, JOHN H. ALLEN, JESSE M. ALMON, EDWIN C. GUY, GEORGE SMITH, ERNEST P. CAIN, THOMAS DALE JOHNSON, BILLY A. BAKER, AND ROSALIE T. ADAMS, VICTOR ALDRIDGE, SR., CLIFTON A. ANDERSON, HELEN L. ANDREWS, CHARLES E. ARRINGTON, LILLIAN B. ARRINGTON, WILLIAM K. AUBRY, JR., W. PRESTON BARBER, JR., PARKER N. BARE, MARGARET H. BARKLEY, JACKIE D. BARRETT, JAMES B. BARRETT, ARTHUR C. BEAMON, FRANK M. BENDER, WILLIAM D. BERG, THOMAS W. BERRIER, PAULINE J. BLACKBURN, BRENDA W. BLANCHFIELD, ROBERT L. BLEVINS, ELIZABETH F. BOLICH, JUNIOUS L. BOST, ELLIE L. BOYLES, HENRY L. BRIDGES, LAWRENCE R. BRIDGES, CAREY H. BROADWELL, CHANCEL T. BROWN, JOAN W. BROWN, MARGARET M. BROWN, JOHN W. BUCHAN, EUNICE W. BULLARD, DEWEY L. BUTLER, McCAULEY C. BYRUM, GERTRUDE G. CAHOON, JOSEPH H. CALDER, CATHERINE N. CANN, DOROTHY T. CARMICHAEL, MAURICE O. CATON, ROBERT A. CAUDLE, MARGARET H. CHAPMAN, ODELL CHILDRESS, CARL L. CLARKE, EDWARD L. CLAY, SR., SHARI T. CLINE, SELMA C. CLODFELTER, HAROLD D. COLEY, MATALINE COLLETTE, ROBERTA M. COOK, ANNA L. COOPER, BERTIE R. COOPER, CHARLIE C. COOPER, CARLYLE C. CRAVEN, N. CHRISTEL C. CREWS, DONALD E. CURTIS, VIOLET H. DANIEL, MILDRED K. DAVIS, HOWARD DICKEY, JOHN B. DILLARD, ESTHER P. DUNCAN, T. J. DUNCAN, HELEN M. DUPREE, JOSEPH E. DUPREE, JESSE W. EDWARDS, CHARLES B. ELKS, DAN R. EMORY, CHARLES F. ENGLISH, MARTIN W. ERICSON, JAMES M. EUBANKS, JR., RUTH U. FARTHING, NELLIE D. FOUNTAIN, J. WARREN FRANKLIN, ZENNA H. FRANKLIN, EMMA LEE FURCHES, ALFRED H. GARNER, EVELYN C. GARRISON, FRED W. GENTRY, CATHERINE M. GILBERT, MEREDITH H. GILBERT, IVEY B. GORDON, IZORIA S. GORDON, LOUIS N. GOSSELIN, GLADYS P. GREEN,

BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

CONSUELLA GREENWOOD, JOHN L. HAIRSTON, RUTH A. HAIRSTON, JAMES A. HAMMONS, SAMUEL L. HARMON, MARY J. HAUSER, ELMO F. HICKS, IDALIA O. HIGH, CARLEE F. HODGE, LUCY GREENE HUBBARD, HUGHES J. HUNT, KAY C. HURT, HAROLD D. ISENBERG, BEN M. ISENHOUR, MARY G. ISENHOUR, MARY P.H. JACKSON, LILLIAN K. JOHNSON, VIRGINIA P. JOHNSON, WALTER C. JOHNSON, JR., C. MYLES JONES, JOE E. JONES, JUNE R. JONES, ROBERT P. JONES, WALTER C. JOYCE, SR., ODELL M. KEARNEY, RUTH H. KESSLER, JOHN KIGER, VELMA D. KING, FRANCES S. KISER, JACOB KOOMEN, JR., DAVID T. LAMBERT, WALTON S. LATTA, TRUDIE J. LAWSON, CLARENCE T. LEINBACH, JR., WALTER G. LEMING, VIRGINIA P. LEWIS, YATES W. LOWE, JAMES A. LYERLY, HARRIETTE B. McCORMICK, L. JAMES McDANIEL, E. R. McKAY, HARRY B. McKEE, W. S. McKINNEY, DORIS W. McLAMB, JOSEPH T. McMILLIAN, JAMES F. MALCOLM, EDWARD G. MANNING, JAMES H. MARCH, ELZA VAN MARION, MARY H. MARTIN, LESTER G. MASENCUP, HELEN S. MAST, JAMES B. MAST, JR., MELVILLE L. MAUNEY, ROBERT A. MAYER, VIRGINIA H. MICKEY, NONA S. MILLER, RUTH MINICK, GROVER F. MINOR, CHARLES B. MIRACLE, JACK K. MOORE, LOLA T. MORETZ, LEO G. MORGAN, WILLIAM F. MORGAN, BRADY W. MULLINAX, SR., JOHN I. NICHOLS, LUCINDA L. NOWLIN, DONALD S. OVERCASH, DWIGHT W. PADGETT, CALVIN C. PEARCE, WILLIAM W. PEEK, GEORGE W. PEELER, MICHAEL PELECH, JUANITA B. PENN, DIANE S. PEOPLES, CHARLES B. PIERCE, EVELYN D. PIERCE, SYLVIA S. PINYAN, MILDRED R. POINDEXTER, WINNIE D. POTTS, LEVI GLEN POWELL, THOMAS C. PRATT, CHARLES W. RANKIN, RALPH L. RAY, PATSY M. REYNOLDS, MATTIE B. RICHARD, ELNA C. ROSE, FRANCES T. SACRINTY, EDNA G. SCALES, MELVIN J. SCALES, VALDA E. SCHMITT, WORTH G. SEATS, CHARLES SELLE, NELSON L. SHEAROUSE, CONRAD H. SHELTON, MARY L. SHELTON, ELIZABETH H. SHERMER, BLANCHE S. SHIPP, RALPH N. SHUE, FRANCIS C. SIMMONS, JOE L. SIMMONS, HAROLD E. SIMPSON, RICHARD H. SIMPSON, REUBEN E. SLADE, GARNET N. SMART, LENORA S. SMITH, LONNIE H. SMITH, MATTIE S. SMITH, PAUL M. SMITH, FRANCES J. SNOW, EULALIA T. SOLOMON, G. VANCE SOLOMON, LUCILE J. SPEAS, DAVID W. SPIVEY, CHARLES A. SPEED, CAROLINE G. SPENCER, THOMAS S. THOMPSON, ELLA BELLE TILLMAN, DORIS E. TUCKER, JUSTUS M. TUCKER, RUTH L. TUCKER, MARGARET M. TUGMAN, FRANK L. UPRIGHT, WALTER P. UPRIGHT, ELIZABETH W. WACKERHAGEN, MARTHA M. WALKER, NORMAN W. WALKER, RALPH B. WALKER, ELIZABETH G. WALLS, JEAN A. WATSON, SAMUEL S. WHEELER, CORA M. WHITEHEAD, DANIEL W. WILLIAMS, ELIZA S. WILLIAMS, HARRY LEE WILLIAMS, ELIZABETH L. WILSON, MARIAN B. WILSON, WILBUR G. WILSON, HOYT A. WISEMAN, VIRGINIA A. WISEMAN, ERNEST B. WOOD, SR., HOWARD L. WOOTERS, THOMAS S. WORSHAM, JACK D. ZIMMERMAN, AND KENNETH A. GRIFFIN, INDIVIDUALLY FOR THE BENEFIT AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PETITIONERS-PLAINTIFFS v. STATE OF NORTH CAROLINA, THE NORTH CAROLINA DEPARTMENT OF REVENUE, HELEN A. POWERS INDIVIDUALLY, BETSY JUSTUS IN HER CAPACITY AS SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF REVENUE, THE NORTH CAROLINA DEPARTMENT OF STATE TREASURER,

## BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

HARLAN E. BOYLES, INDIVIDUALLY AND IN HIS CAPACITY AS TREASURER OF THE STATE OF NORTH CAROLINA, THE NORTH CAROLINA FIREMEN'S AND RESCUE WORKER'S PENSION FUND, LEGISLATIVE RETIREMENT SYSTEM, NATIONAL GUARD RETIREMENT SYSTEM, RETIREMENT SYSTEMS FOR COUNTIES, CITIES, AND TOWNS, RETIREMENT SYSTEM FOR TEACHERS AND STATE EMPLOYEES, SUPPLEMENTAL RETIREMENT INCOME ACT OF 1984, SEPARATE INSURANCE BENEFIT PLANS FOR STATE AND LOCAL GOVERNMENTAL LAW ENFORCEMENT OFFICERS, SHERIFF'S SUPPLEMENTAL PENSION FUND OF 1985, ANNUITIES FOR STATE EMPLOYEES, REGISTER OF DEEDS SUPPLEMENTAL PENSION FUND, UNIFORM CONSOLIDATED JUDICIAL RETIREMENT SYSTEM, AND PUBLIC EMPLOYEES BENEFITS SERVICES OF NORTH CAROLINA, FIREMAN'S SUPPLEMENTAL FUND (HICKORY), CHARLOTTE FIREFIGHTERS' RETIREMENT SYSTEM, OPTIONAL RETIREMENT PROGRAM FOR STATE INSTITUTIONS OF HIGHER EDUCATION, RESPONDENTS-DEFENDANTS

No. 105PA91

(Filed 6 December 1991)

1. **State § 4.2 (NCI3d) — action against Department of Revenue — sovereign immunity**

   An action against the Department of Revenue is an action against the State, and the State cannot be sued without its permission.

   **Am Jur 2d, States, Territories, and Dependencies §§ 99, 104.**

2. **Taxation § 38 (NCI3d) — challenge to tax as unlawful — statutory remedy**

   When a tax is challenged as unlawful rather than excessive or incorrect, the appropriate remedy is to bring suit under N.C.G.S. § 105-267.

   **Am Jur 2d, State and Local Taxation §§ 1059, 1064, 1065.**

3. **Taxation § 38.3 (NCI3d) — necessity for demand of refund**

   A taxpayer with a valid defense to the enforcement of the collection of a tax must first pay the tax, then demand a refund of that tax within thirty days after payment. Only when the Secretary of Revenue fails to refund the tax within ninety days may the taxpayer sue the Secretary of Revenue for the amount demanded. N.C.G.S. § 105-267.

   **Am Jur 2d, State and Local Taxation § 609.**

BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

4. **Taxation § 38 (NCI3d) — class action for tax refund — individual compliance with statute**

Even when taxpayers are seeking a tax refund as a class, each member must individually satisfy the conditions precedent to suit mandated in N.C.G.S. § 105-267.

**Am Jur 2d, Parties § 51; State and Local Taxation § 1074.**

**Propriety of class action in state courts to recover taxes. 10 ALR4th 655.**

5. **Taxation § 38 (NCI3d) — class demand for refunds — insufficiency**

Plaintiffs' class demands for refunds of taxes collected because of the repealed exemption for vested participants in state and local government retirement plans were invalid for purposes of suing for refunds under N.C.G.S. § 105-267 where (1) the demands were not made before an action was instituted against the Secretary of Revenue as required by the statute, and (2) the demands failed to include information about individual taxpayers required by reasonable regulations adopted by the Secretary of Revenue.

**Am Jur 2d, Parties § 51; State and Local Taxation § 1074.**

**Propriety of class action in state courts to recover taxes. 10 ALR4th 655.**

6. **Taxation § 38.1 (NCI3d) — income taxes on pensions — injunctive relief unavailable**

Plaintiff taxpayers were precluded by N.C.G.S. § 105-267 from obtaining injunctive relief on constitutional grounds to prevent future collection of income taxes on state and local government retirement benefits since that statute bars courts absolutely from entertaining suits of any kind brought for the purpose of preventing the collection of any tax imposed in Subchapter I.

**Am Jur 2d, State and Local Taxation §§ 508, 1116, 1117.**

7. **Public Officers § 9 (NCI3d) — State Treasurer — Secretary of Revenue — compliance with tax statute — constitutionality of statute not determined — individual capacities — immunity from suit on constitutional grounds**

The State Treasurer and the Secretary of Revenue are entitled to immunity in their individual capacities from civil

liability on federal and state constitutional grounds for their compliance with the act repealing the income tax exemption for state and local government retirement benefits where the constitutionality of the repealing act has not yet been examined by federal courts or by the appellate courts of this state.

**Am Jur 2d, State, Territories, and Dependencies §§ 99, 104; State and Local Taxation §§ 1059, 1063.**

Justice MITCHELL concurring in part and dissenting in part.

ON discretionary review prior to determination by the Court of Appeals pursuant to N.C.G.S. § 7A-31 of an order of class certification entered on 31 December 1990 *nunc pro tunc* for 29 October 1990 and an order granting partial summary judgment for plaintiffs entered on 2 November 1990 by *Lake, J.*, presiding at the 29 October 1990 session of Superior Court, WAKE County. Heard in the Supreme Court 8 May 1991.

*Womble, Carlyle, Sandridge & Rice, by G. Eugene Boyce, and Donald L. Smith; Wallace R. Young, Charles H. Taylor, and J. Frank Huskins, for plaintiff-appellees.*

*Lacy H. Thornburg, Attorney General, by Edwin M. Speas, Jr., Senior Deputy Attorney General, George W. Boylan, Special Deputy Attorney General, Norma S. Harrell, Special Deputy Attorney General, and Douglas A. Johnston, Assistant Attorney General, for defendant-appellants.*

*Robinson, Bradshaw & Hinson, P.A., by John R. Wester and David C. Wright, III, for defendant-appellant Helen A. Powers.*

EXUM, Chief Justice.

In this appeal class plaintiffs challenge the validity under the North Carolina Constitution of a repealed tax exemption for vested participants in state and local government retirement plans. We do not reach the constitutional issue because plaintiffs failed to comply with N.C.G.S. § 105-267, under which an arguably invalid tax can be challenged and remedial action taken. We therefore hold plaintiffs' claims for a refund of taxes collected because of

the repealed exemption and for an injunction prohibiting the collection of such taxes should have been dismissed.

I.

Like *Swanson v. State of North Carolina*, 329 N.C. 576, 407 S.E.2d 791 (1991), this case arose in the wake of *Davis v. Dept. of Treasury*, 489 U.S. 803, 103 L. Ed. 2d 891 (1989). In *Davis* the Supreme Court held a state statute exempting state employees' retirement benefits from taxation but not granting the same exemption to their federal counterparts violated the constitutional doctrine of intergovernmental tax immunity and 4 U.S.C. § 111. Under that statute the federal government "consents to the taxation of pay or compensation for personal service as an officer or employee of the United States . . . if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation." 4 U.S.C. § 111.

In response to *Davis*, the General Assembly repealed the income tax exemption for state and local retirement plans, 1989 Sess. Laws ch. 792, § 3.9 (hereinafter Chapter 792), and substituted a $4,000 annual exclusion for federal, state, and local government retirees. N.C.G.S. § 105-134.6 (1989). In *Swanson* this Court held that *Davis* did not apply retroactively to Chapter 792. Because the repealed statute was held to have been applicable until 28 March 1989, when *Davis* was decided, appellants—two classes of federal employees—were not entitled to refunds on taxes paid for tax years 1985 through 1989.

Class plaintiffs in this case are North Carolina state and local government employees whose retirement benefits vested on or before 12 August 1989, the ratification date of Chapter 792. Plaintiffs' complaint, filed 26 February 1990, named as defendants the State of North Carolina; the North Carolina Department of Revenue and the North Carolina Department of State Treasurer; Helen A. Powers, Secretary of the North Carolina Department of Revenue, in her individual and official capacities; Harlan E. Boyles, Treasurer of the State of North Carolina, in his individual and official capacities; and numerous state and local government retirement plans.

Plaintiffs allege their action is maintainable as a class action under N.C.G.S. § 1A-1, Rule 23: the class consists of "tens of thousands of people" whose identities are readily ascertainable from defendants' records, questions of law and fact critical to the action

## BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

are common to all members of the class, representatives' claims typify those of unnamed class members, and the relief sought would be effective and appropriate for all class members. The gravamen alleged is that under color of law defendant state officials engaged in a pattern, practice, or policy of unlawfully and unconstitutionally taxing plaintiffs' pension benefits and that defendant retirement plans violated assurances that plaintiffs' benefits would be exempt from North Carolina income tax. Plaintiffs' claims for relief rest on a number of legal theories,[1] and they seek two forms of relief: the refund of taxes paid on benefits exempted from such taxation prior to 12 August 1989, and an injunction against the future collection of such taxes.

In their answer defendants disclaim knowledge of whether plaintiffs' action is suitable as a class action. They deny engaging under color of law in a pattern, practice, or policy of unlawfully and unconstitutionally taxing plaintiffs' pension benefits. Defendants further deny any contract between defendants and plaintiffs that provided plaintiffs an exemption from income taxes or, alternatively, that defendants have ever impaired the obligations of any such contract.[2]

Pursuant to a superior court order for conditional class certification, letters dated 28 February, 26 March, 16 April, and 26 April 1990 were sent to Helen A. Powers, Secretary of the North

---

1. The legal bases for plaintiffs' claims for relief include: breach of contract between plaintiffs and their governmental employers or pension plans; taking property in violation of due process and equal protection guarantees in the United States Constitution; and impairment of contractual obligations prohibited by Article I, Section 10 of the United States Constitution. In addition, plaintiffs allege that Chapter 792 violates numerous provisions of the North Carolina Constitution, including Article I, Section 16, in taxing acts previously done; Article I, Section 19, in violating guarantees to due process, equal protection, and against impairing obligations of contract; Article IV, Section 21, in diminishing the salaries of members of the judicial branch of government during their continuance in office; Article V, Section 5, in not stating the special object to which the levied tax is to be applied; and Article V, Section 6, in authorizing the use of retirement funds for purposes other than retirement benefits.

2. Defenses asserted in defendants' answer include: the sovereign immunity of the State of North Carolina; the qualified immunity of its officials; the unenforceability under the North Carolina Constitution, Article V, Section 2, of any contractual right to a tax exemption; plaintiffs' failure to pay taxes before suing to prevent their collection; and a bar by the statute of limitations of N.C.G.S. § 105-267 regarding recovery sought of taxes paid more than thirty days prior to the date of their refund demand.

**BAILEY v. STATE OF NORTH CAROLINA**

[330 N.C. 227 (1991)]

Carolina Department of Revenue. Citing the authority of N.C.G.S. § 105-267, the letters demanded "a refund of all taxes on any pension, benefits, or monies received from any present or former retirement system of the State of North Carolina heretofore paid for the tax year 1989 by any named or unnamed class member." They were signed by individuals whose names are not among those of the named plaintiffs in this action. Similar letters, dated 16 and 26 April 1990, which made collective demands for refunds under N.C.G.S. § 147-84, were sent to Harlan E. Boyles, Treasurer of the State of North Carolina. Among the affidavits offered as exhibits, only one named plaintiff averred he had sent an individual demand for refund of those taxes alleged to be invalid by the class. Like the collective demand letters, the individual demand, dated 30 April 1990, postdated the filing date of plaintiffs' complaint.

An order of class certification was filed 31 December 1990, *nunc pro tunc* for 29 October 1990.

On 2 November 1990 the superior court granted partial summary judgment for plaintiffs on two grounds: the removal of income tax exemptions on pensions under Chapter 792 is a retroactive tax in violation of the North Carolina Constitution, Article I, Section 16, and it diminishes judges' salaries in violation of the North Carolina Constitution, Article IV, Section 21. The court ordered that plaintiffs should recover taxes paid on retirement benefits and enjoined defendants from further collection of these taxes. On 31 December 1990 the court granted summary judgment in favor of defendants Helen A. Powers and Harlan E. Boyles as to claims against them in their individual capacities. Plaintiffs and defendants each filed timely notice of appeal. On 4 March 1991 this Court allowed the parties' joint petition for discretionary review prior to determination by the Court of Appeals.

We hold the trial court erred in granting partial summary judgment for plaintiffs and in failing to grant summary judgment for defendants. Insofar as plaintiffs' complaint seeks a refund of 1989 taxes paid, it should have been dismissed for failure of plaintiffs to satisfy conditions precedent to such an action as required by N.C.G.S. § 105-267. Insofar as the complaint seeks injunctive relief to prevent the future collection of the challenged tax, it should have been dismissed because N.C.G.S. § 105-267 forecloses this kind of relief. We hold further that the trial court properly

## BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

granted summary judgment for defendants Secretary Powers and Treasurer Boyles in their individual capacities.

## II.

Defendants contend plaintiffs failed to follow the procedures mandated by N.C.G.S. § 105-267 for the refund of an invalid tax. We agree.

[1] An action against the Department of Revenue is an action against the State, *Buchan v. Shaw*, 238 N.C. 522, 523, 78 S.E.2d 317, 317 (1953), and the State cannot be sued without its permission. *Insurance Co. v. Unemployment Compensation Com.*, 217 N.C. 495, 499, 8 S.E.2d 619, 621 (1940).

> When statutory provision has been made for an action against the State, the procedure prescribed by statute must be followed, and the remedies thus afforded are exclusive. The right to sue the State is a conditional right, and the terms prescribed by the Legislature are conditions precedent to the institution of the action.

*Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. 168, 173, 118 S.E.2d 792, 795 (1961), *overruled on other grounds*, *Smith v. State*, 289 N.C. 303, 222 S.E.2d 412 (1976) (when State enters into valid contract, it implicitly consents to be sued for its breach thereof). *See also Kirkpatrick v. Currie, Comr. of Revenue*, 250 N.C. 213, 216, 108 S.E.2d 209, 211 (1959); *Duke v. Shaw, Comr. of Revenue*, 247 N.C. 236, 239, 100 S.E.2d 506, 508 (1957); *Insurance Co. v. Unemployment Compensation Com.*, 217 N.C. at 501, 8 S.E.2d at 622; *Rotan v. State*, 195 N.C. 291, 296, 141 S.E. 733, 735 (1928).

[2, 3] When a tax is challenged as unlawful rather than excessive or incorrect, the appropriate remedy is to bring suit under N.C.G.S. § 105-267. *Coca-Cola Co. v. Coble*, 293 N.C. 565, 568, 238 S.E.2d 780, 783 (1977). *See also Redevelopment Comm. v. Guilford County*, 274 N.C. 585, 589, 164 S.E.2d 476, 479 (1968). "[A] constitutional defense to a tax does not exempt a plaintiff from the mandatory procedure for challenging the tax set out in N.C.G.S. § 105-267." *47th Street Photo, Inc. v. Powers*, 100 N.C. App. 746, 749, 398 S.E.2d 52, 54 (1990), *disc. rev. denied*, 329 N.C. 268, 407 S.E.2d 835 (1991).

Section 105-267 provides:

> No court of this State shall entertain a suit of any kind brought for the purpose of preventing the collection of any

BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

tax imposed in this Subchapter. Whenever a person shall have a valid defense to the enforcement of the collection of a tax assessed or charged against him or his property, such person shall pay such tax to the proper officer, and such payment shall be without prejudice to any defense of rights he may have in the premises. At any time within 30 days after payment, the taxpayer may demand a refund of the tax paid in writing from the Secretary of Revenue and if the same shall not be refunded within 90 days thereafter, may sue the Secretary of Revenue in the courts of the State for the amount so demanded. Such suit may be brought in the Superior Court of Wake County, or in the county in which the taxpayer resides at any time within three years after the expiration of the 90-day period allowed for making the refund. If upon the trial it shall be determined that such a tax or any part thereof was levied or assessed for an illegal or unauthorized purpose, or was for any reason invalid or excessive, judgment shall be rendered therefor, with interest, and the same shall be collected as in other cases. The amount of taxes for which judgment shall be rendered in such action shall be refunded by the State; provided, nothing in this section shall be construed to conflict with or supersede the provisions of G.S. 105-241.2.

N.C.G.S. § 105-267 (1986). A taxpayer with "a valid defense to the enforcement of the collection of a tax" must first pay the tax, then demand a refund of that tax in writing within thirty days after payment. Only when the Secretary of Revenue fails to refund the tax within ninety days may the taxpayer sue the Secretary of Revenue for the amount demanded. Absent protest in the form of a demand for refund, a tax is voluntarily paid, and "voluntary payments of unconstitutional taxes are not refundable." *Coca-Cola Co. v. Coble*, 293 N.C. at 569, 238 S.E.2d at 783. The right to sue is a conditional right; the terms prescribed are conditions precedent to the institution of the action. Plaintiffs must allege and prove they demanded a refund within thirty days after payment. Failure to do so forfeits the right to sue. *Kirkpatrick v. Currin, Comr. of Revenue*, 250 N.C. at 216, 108 S.E.2d at 211; *Stenhouse v. Lynch*, 37 N.C. App. 280, 281, 245 S.E.2d 830, 831 (1978).

BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

[4] Even when taxpayers are seeking a tax refund as a class,[3] the requisites of N.C.G.S. § 105-267 must be met. In *Stenhouse v. Lynch*, the Court of Appeals held that a class of plaintiffs who sought a refund of taxes on unemployment compensation were foreclosed by failure of any member of the class to make the requisite demand for refund. "[T]he taxes complained of cannot be recovered where paid voluntarily and without compulsion even though the taxes were levied unlawfully, in absence of demand for refund in compliance with the statute." 37 N.C. App. at 282, 245 S.E.2d at 831.

[5] In this case all class demand letters sent to the Secretary of Revenue *were preceded by* the filing of plaintiffs' complaint. Even the letter sent by the sole class member who averred he had individually demanded a refund was dated 30 April 1990 — nearly two months *after* 26 February 1990, the filing date of plaintiffs' complaint. We hold that this failure to satisfy the condition precedent of N.C.G.S. § 105-267 that the taxpayer demand a refund *before* instituting an action against the Secretary of Revenue foreclosed plaintiffs' action.

Moreover, although N.C.G.S. § 105-267 does not expressly prohibit taxpayers from seeking refunds as a class, it includes no provision for a tax refund demand to be made either by taxpayers as a class or as represented by others. In this case, the Secretary rejected plaintiffs' class demands because, as she explained in her response of 26 April 1990,

to constitute a valid demand for refund under G.S. 105-267, a taxpayer's request must include sufficient information to

3. Under the circumstances of this case this Court need not decide whether a suit for a tax refund may be brought as a class action. Nevertheless, we note some support for this position in both the federal and North Carolina jurisprudence. *See Crow v. Citicorp Acceptance Co., Inc.*, 319 N.C. 274, 285, 354 S.E.2d 459, 467 (1987) ("When our General Assembly has wished to prevent class actions to enforce statutory claims for relief . . . , it has said so expressly and unequivocally[;] . . . the failure of the General Assembly to expressly prohibit class actions to enforce the statutes under which plaintiffs claim relief [indicates] that it intended to allow them for such purposes); *Gramling v. Maxwell*, 52 F.2d 256, 261 (D.C.N.C. 1931) (remedy of individual actions at law under the Revenue Act of North Carolina (Pub. L. 1931, ch. 427) for recovery of taxes paid under protest inadequate compared with class action under that act, which "eliminates so much useless and cumbersome litigation"). We emphasize, however, that when a class of taxpayers seeks to sue for a refund under N.C.G.S. § 105-267, each member must individually satisfy the conditions precedent to suit mandated in that statute.

BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

permit the Department to determine whether a refund may be made and, if so, in what amount. Such information would normally consist of the taxpayer's name and social security number, the year for which the tax was paid, the date on which the return was filed or the tax was paid, and the amount of state retirement income received by the taxpayer during the year.

The General Assembly did not prescribe the precise manner in which a demand for refund is to be made to the Secretary of Revenue. "This Court has held that under general authority to formulate regulations, an administrative agency of the State may prescribe by rule the procedure by which a right granted may be exercised." *Comr. of Insurance v. North Carolina Rate Bureau*, 300 N.C. 381, 403, 269 S.E.2d 547, 563, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980). The Department of Revenue is an administrative agency of the State. *See* N.C.G.S. § 150B-2(1) (1987). "[W]e must expect the Legislature to legislate only so far as is reasonable and practical to do and we must leave to executive officers the authority to accomplish the legislative purpose, guided of course by proper standards." *Id.* at 402, 269 S.E.2d at 563.

Reasons for requiring that refund demands include the information identified by the Secretary of Revenue evidently spring from a concern for the stability of the fisc:

Where protest has been interposed, the [taxing authority] is notified that it may be obliged to refund the taxes and is required to be prepared to meet that contingency. If no protest has been lodged, it is generally assumed that taxes paid can be retained to meet authorized public expenditures, and financial provision is not made for contingent refunds.

*Conklin v. Town of Southampton*, 141 A.D.2d 596, 598, 529 N.Y.S.2d 517, 519 (1988) (quoting *Mercury Mach. Importing Corp. v. City of New York*, 3 N.Y.2d 418, 426, 144 N.E.2d 400, 404, 165 N.Y.S.2d 517, 521 (1957)). The requirements for a valid demand stipulated by the Secretary of Revenue evince both good judgment and good faith, and under such circumstances this Court cannot interfere. "[C]ourts were not created or vested with the authority to act as supervisory agencies to control and direct the action of executive and administrative agencies or officials." *Comr. of Insurance v. North Carolina Rate Bureau*, 300 N.C. at 403, 269 S.E.2d at 563. We hold that plaintiffs' class demands for refunds followed neither

## BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

the letter of the statute nor the reasonable criteria required by the Secretary of Revenue and were properly rejected and deemed invalid for purposes of suing for refunds under N.C.G.S. § 105-267.[4]

---

4. When class plaintiffs have attempted to challenge taxes by lawsuits in other states, appellate courts have generally held, as we have, that such suits cannot be maintained unless preceded by an individual notice, protest or demand. *See, e.g., Evans v. Arizona Dept. of Corrections*, 139 Ariz. 321, 678 P.2d 506 (Ariz. App. 1983) (legislature did not intend for class claim to satisfy statutory notice requirement, which must be satisfied by each individual or entity having contract or negligence claim against state); *Bozaich v. State*, 32 Cal. App. 3d 688, 108 Cal. Rptr. 392 (5 Dist. 1973) (if in inverse condemnation, tort, or breach of contract suits against state class claim is permitted in order to defeat time requirements for presentation of claims, such requirements would be meaningless); *Hoffman v. Colorado State Bd. of Assessment Appeals*, 683 P.2d 783 (Colo. 1984) (property tax assessment statute contemplates individualized treatment of claims rather than examination of general protest of class of plaintiffs; court therefore lacked jurisdiction to grant tax relief); *Aronson v. Commonwealth*, 401 Mass. 244, 516 N.E.2d 137 (1987) (where attempt is made to obtain refunds of substantial amounts of money on behalf of numerous unidentified taxpayers, the procedures of the administrative process should not be bypassed), *cert. denied*, 488 U.S. 818, 102 L. Ed. 2d 36 (1988); *Duffy v. Wetzler*, 148 Misc. 2d 459, 555 N.Y.S.2d 543 (N.Y. Sup. 1990) (commencement of action purportedly on behalf of all similarly situated taxpayers does not constitute appropriate indication of protest by each proposed member of class); *Gandolfi v. City of Yonkers*, 101 A.D.2d 188, 475 N.Y.S. 429 (N.Y.A.D. 2 Dept. 1984) (tax refund claim is personal to the taxpayer; only those who have filed an appropriate protest may obtain a tax refund), *appeal dismissed*, 62 N.Y.2d 882, 467 N.E.2d 529, 478 N.Y.S.2d 865, *and* 62 N.Y.2d 604, 467 N.E.2d 532, 478 N.Y.S.2d 1023, *order aff'd*, 62 N.Y.2d 995, 468 N.E.2d 699, 479 N.Y.S.2d 517 (1984). *See also Mervak v. Niagara Falls*, 101 Misc. 2d 68, 420 N.Y.S.2d 687 (N.Y. Sup. 1979) (class action precluded by statutory notice of claim requirements because claims did not occur contemporaneously and timeliness of notice of claims must be dealt with on case-by-case basis); *Salvaggio v. Houston Indep. School Dist.*, 709 S.W.2d 306 (Tex. App. Houston, 14th Dist. 1986) (class certification of taxpayers who had paid tax penalty properly denied where fact findings as to voluntariness of payment would be required, but properly granted to taxpayers against whom penalties had been assessed but not paid). *And see Lunsford v. United States*, 570 F.2d 221 (8th Cir. 1977) (class claim under FTCA did not adequately present the claims of unnamed class members because not all claimants identifiable, no authority asserted by non-named plaintiffs to be represented by claim of those named, and no sum certain stated with respect to class claim). *Cf. San Jose v. Superior Court*, 12 Cal. 3d 447, 115 Cal. Rptr. 797, 525 P.2d 701 (1974) (under statute providing that "claims shall be presented by the claimant or by a person acting on his behalf," class representative claim that included representative's name, address, date, occurrence, and amount claimed, plus "sufficient information to identify and make ascertainable the class itself" satisfies statutory precondition to inverse condemnation and nuisance suit against state); *Lattin v. Franchise Tax Bd.*, 75 Cal. App. 3d 377, 142 Cal. Rptr. 130 (1 Dist. 1977) (no jurisdiction to maintain class action when claim for refund made by class representatives only in their own behalf, yet complaint filed on behalf of putative class). *But see Andrew S. Arena, Inc. v. Superior Court*, 163 Ariz. 423, 788 P.2d 1174 (1990) (when identities and locations of class members discoverable, so as to allow

We hold, absent specific statutory authorization for class or representative tax refund demands, such demands are ineffectual to satisfy this condition precedent to legal action for a tax refund under N.C.G.S. § 105-267.

## III.

[6] Neither is injunctive relief as to future collection of the challenged tax available to plaintiffs.

Section 105-267 begins: "No court of this State shall entertain a suit of any kind brought for the purpose of preventing the collection of any tax imposed in this Subchapter." N.C.G.S. § 105-267 (1986). The absolute prohibition against injunction to restrain the collection of any tax governed by Subchapter I, "Levy of Taxes," N.C.G.S. §§ 105-1 through 105-270 (1989), differs significantly from the conditional prohibition in Subchapter II, "Listing, Appraisal, and Assessment of Property and Collection of Taxes on Property," which provides:

> No court may enjoin the collection of any tax, the sale of any tax lien, or the sale of any property for nonpayment of any tax imposed under the authority of this Subchapter except upon a showing that the tax (or some part thereof) is illegal or levied for an illegal or unauthorized purpose.

N.C.G.S. § 105-379 (1989). The latter statute has been viewed as permitting an "equitable exception[ ]" to "the broad exclusionary language therein," *Enterprises, Inc. v. Dept. of Motor Vehicles*, 290 N.C. 450, 455, 226 S.E.2d 336, 339 (1976), an exception that is notably lacking from its counterpart in Subchapter I.

The appellate courts of this state have frequently reiterated "the general rule that there shall be no injunctive or declaratory relief to prevent the collection of a tax, *i.e.*, the taxpayer must pay the tax and bring suit for a refund." *Id. See also Oil Corp. v. Clayton, Comr. of Revenue*, 267 N.C. 15, 20, 147 S.E.2d 522, 526 (1966) (requiring the taxpayer to pay the amount of the disputed

county to investigate claim and assess liability, class claim permissible); *Santa Barbara Optical Co. v. State Bd. of Equalization*, 47 Cal. App. 3d 244, 120 Cal. Rptr. 609 (2 Dist. 1975) (when statute does not require specific identification of each claimant in advance of complaint, "claimant" should be equated with class itself). *See generally* Annot. "State Class Action to Recover Taxes," 10 A.L.R.4th 655 (1981); Annot. "Maintenance of Class Action Against Governmental Entity as Affected by Requirement of Notice of Claim," 76 A.L.R.3d 1244 (1977).

tax and sue the State for its recovery, a method available to taxpayers since 1887, is the appropriate procedure for a taxpayer who seeks to test the constitutionality of a statute); *Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. at 173-74, 118 S.E.2d at 792 (Declaratory Judgment Act has not been permitted to supplant or substitute for the specific statutory proceeding for testing the constitutionality of a tax statute); *47th Street Photo, Inc. v. Powers*, 100 N.C. App. at 748, 298 S.E.2d at 54 (requirement that the taxpayer pay the tax, then demand a refund "is the appropriate procedure for a taxpayer who seeks to test the constitutionality of a statute or its application to him").

Injunctive relief for the imposition of personal income taxes challenged on constitutional grounds has never been approved by our appellate courts. Our trial courts have properly enjoined the collection of taxes alleged to be constitutionally infirm only under the authority of statutes other than N.C.G.S. § 105-267. Thus, under statutes antedating the enactment of section 105-267 in the Revenue Act of 1939 (1939 N.C. Sess. Laws ch. 158, § 936) and its predecessor, 1931 N.C. Sess. Laws ch. 427, § 510, this Court held plaintiffs were entitled upon the pleadings to a perpetual injunction against the collection of unconstitutional town taxes. *Young v. Town of Henderson*, 76 N.C. 420, 424 (1877). And this Court has approved in principle injunctions against the collection of illegal, invalid, or unauthorized taxes under N.C.G.S. § 105-379 or N.C.G.S. § 105-406 (repealed by 1971 N.C. Sess. Laws ch. 806, § 3) or their common predecessor statutes. *See, e.g., Redevelopment Comm. v. Guilford County*, 274 N.C. 585, 588-89, 164 S.E.2d 476, 478-79 (1968) (collection of illegal or invalid tax — as distinguished from an erroneous tax — may be enjoined); *Wynn v. Trustees*, 255 N.C. 594, 599, 122 S.E.2d 404, 407 (1961) (injunction available to taxpayer when tax is challenged because illegal, invalid, or levied or assessed for unauthorized purpose); *Barbee v. Comrs. of Wake*, 210 N.C. 717, 719, 188 S.E. 314, 315 (1936) (unless otherwise provided by statute, injunction at the instance of a taxpayer is regarded as an appropriate remedy to resist the levy of an invalid assessment or to restrain the collection of an illegal tax). *See also Nicholson v. Education Assistance Authority*, 275 N.C. 439, 447, 168 S.E.2d 401, 406 (1969) ("A taxpayer, as such, may challenge, by suit for injunction, the constitutionality of a tax levied, or proposed to be levied, upon him for an illegal or unauthorized purpose.").

**BAILEY v. STATE OF NORTH CAROLINA**

[330 N.C. 227 (1991)]

Section 105-267, by contrast, bars courts absolutely from entertaining suits of any kind brought for the purpose of preventing the collection of any tax imposed in Subchapter I. Since the taxes challenged by plaintiffs were Subchapter I taxes, we hold that the trial court erred in enjoining defendants from further collection of taxes paid on plaintiffs'·retirement benefits. Under section 105-267 plaintiffs' remedies are restricted to a refund of any illegal, invalid, or unauthorized tax, but only if the prerequisites of that statute have been followed. This, as we have held, plaintiffs failed to do.

IV.

[7]  Finally, plaintiffs appeal the trial court's order granting summary judgment for defendants Helen A. Powers, Secretary of the North Carolina Department of Revenue, and Harlan E. Boyles, Treasurer of the State of North Carolina, as to claims against them in their individual capacities.

In response to class refund demands sent to the Department of the Treasury, the Department of Justice conveyed the position of the State Treasurer: N.C.G.S. § 147-84 "simply sets forth the principle that whenever taxes have been by clerical error, misinterpretation of law, or otherwise, collected and paid into the state treasury in excess of the amount found legally due the state, the excess amount shall be refunded to the person entitled thereto. The determination of whether amounts are legally due and the determination of persons entitled thereto are not within the authority of the State Treasurer to make." Secretary Powers rejected plaintiffs' class demand because it lacked specific information necessary to identify the numbers of claimants and to ascertain amounts owed.

Plaintiffs alleged that, in rejecting their refund demands, defendants Powers and Boyles failed in their duties "to support and maintain the Constitution and laws of the United States and . . . of North Carolina," N.C. Const. art. VI, § 7, insofar as they refused to refund tax monies collected in derogation of federal and state constitutional provisions.[5]

---

5. Plaintiffs alleged specifically that the refusal of both officials (1) "amounts to a taking of property without just compensation, is arbitrary and capricious, is·a violation of due process and equal protection"; (2) impairs the obligations of contract under color of law in violation of the United States Constitution, Article I, Section 10; (3) violates due process and equal protection guarantees of the North Carolina Constitution; (4) violates state constitutional prohibitions against retroactive taxation, N.C. Const. art. I, § 16, and the diminution of judicial salaries during

BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

Defendants answered and argue on appeal that Powers and Boyles acted "within the scope of their authority as officers of the State of North Carolina in the good faith belief that they were acting lawfully in the best interests of the State," and that they were thus entitled to the defenses of qualified immunity and the immunity of public officials. A public official is not liable for damages in an action brought under 42 U.S.C. § 1983 unless the conduct complained of "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410 (1982). "The right [allegedly violated by the official] must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986). *See also Anderson v. Creighton*, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 531 (1987) (unlawfulness must be apparent in the light of pre-existing law); *Danenberger v. Johnson*, 821 F.2d 361, 365 (7th Cir. 1987) (to be "clearly established," the right allegedly violated "must be clearly recognized in existing case law.").

In *Swanson v. Powers*, 937 F.2d 965 (4th Cir. 1991), the Fourth Circuit Court of Appeals held that Helen Powers was entitled to immunity from suit for collecting taxes from federal retirees over a four-year period preceding the Supreme Court's decision in *Davis v. Dept. of Treasury*, 489 U.S. 803, 103 L. Ed. 2d 891, and so allegedly violating the constitutional doctrine of intergovernmental tax immunity and the Public Salary Tax Act of 1939. *Swanson*, 937 F.2d at 966. The Fourth Circuit observed that "[l]egislative classifications . . . are presumed to be constitutional." *Swanson*, 937 F.2d at 969 (quoting *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 17, 101 L. Ed. 2d 1, 19 (1988)). "Rarely will a state official who simply enforces a presumptively valid statute thereby lose her immunity from suit." *Swanson*, 937 F.2d at 968. "[T]he greater the similarity of the existing case law to the situation at hand, the greater its guidance to a reasonable state official." *Id.* at 969. "The usual practice must . . . be that '[u]ntil judges say otherwise, state officers . . . have the power to carry forward the directives of the state legislature.'" *Id.* (quoting *Lemon v. Kurtzman*, 411 U.S. 192, 208, 36 L. Ed. 2d 151, 165 (1973)).

---

continuance in office, N.C. Const. art. IV, § 21; (5) unconstitutionally levies a tax without stating the specific object to which the tax is to be applied, N.C. Const. art. V, § 5; and (6) unconstitutionally authorizes the use of retirement funds for purposes other than retirement benefits and purposes, N.C. Const. art. V, § 6.

BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

We concur with and adopt the reasoning and conclusions of *Swanson* with regard to all claims against defendants Powers and Boyles grounded in the federal Constitution. Public officials are not seers. Although they may be "charged with the knowledge of constitutional developments, [they] are not required to predict the future course of constitutional law." *Swanson*, 937 F.2d at 968 (quoting *Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir. 1989)). We will not hold public officials of this state to more perfect knowledge of the law than is apparent in appellate court reports. The constitutionality of Chapter 792 has not yet been examined either by federal courts or by the appellate courts of this state.[6] We hold that, absent the guidance of such opinions, defendants Powers and Boyles were entitled to immunity from civil liability for complying with a statute that was presumptively valid.

---

6. Plaintiffs' assertion that Chapter 792 unconstitutionally impairs obligations of contract is supported, they contend, by *Mathews v. Board of Trustees of the Asheville Policeman's Pension and Disability Fund*, 96 N.C. App. 186, 385 S.E.2d 343 (1989), *disc. rev. denied*, 326 N.C. 364, 389 S.E.2d 814 (1990), and *Simpson v. North Carolina Local Governmental Retirement System*, 88 N.C. App. 218, 363 S.E.2d 90 (1987), *aff'd*, 323 N.C. 362, 372 S.E.2d 559 (1988). In dicta the Court of Appeals in *Mathews* agreed with a Florida court "and every jurisdiction which has addressed the distinction between mandatory and voluntary participation [in a pension plan] . . . that 'benefits provided for employees under a voluntary pension or retirement plan created by an act of the legislature may not be modified or reduced by subsequent amendatory legislation for the reason that those electing to participate in such voluntary plans acquire vested rights of contract to the benefits provided therein upon acceptance of the plan which rights may not be impaired by subsequent amendments to the act.' " *Mathews*, 96 N.C. App. at 190, 385 S.E.2d at 345 (quoting *State v. City of Jacksonville Beach*, 142 So.2d 349, 353 (Fla. App. 1962), *aff'd*, 151 So.2d 430 (Fla. 1963)).

In *Simpson*, the Court of Appeals held the relationship between vested members of a government pension fund and the fund itself is contractual and that a statute that diminished an employees' calculated benefits impairs those contractual rights. Such impairment is not necessarily unconstitutional, however. "[S]tates may impair contracts in the exercise of their police power in order to protect the general interests of the commonwealth." *Simpson*, 88 N.C. App. at 224, 363 S.E.2d at 94. Impairment of contracts does not violate the Contract Clause when it is "reasonable and necessary to serve an important public purpose." *Id.* at 325, 363 S.E.2d at 94.

Although *Simpson* demonstrates that plaintiffs' impairment of contracts claim has some basis in state law, it also indicates that the question whether an act unconstitutionally impairs the right to contract violates the Contract Clause is one courts must resolve case by case. Under such circumstances, and cognizant that "[t]he power of taxation . . . shall never be surrendered, suspended, or contracted away," N.C. Const. art. V, § 2(1), Secretary Powers properly enforced Chapter 792 because the law in this regard was not "clearly established."

## BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

We draw parallel conclusions regarding plaintiffs' claims brought under the North Carolina Constitution. In this jurisdiction an official may be held liable when he acts maliciously or corruptly, when he acts beyond the scope of his duties, or when he fails to act at all. "As long as a public official lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Smith v. State*, 289 at 331, 222 S.E.2d at 430.

The oath of office for both the Secretary of the North Carolina Department of Revenue and the Treasurer of North Carolina requires that the official "will support and maintain the Constitution and laws" of the nation and the state. N.C. Const. art. VI, § 7. Among the duties and obligations of the Secretary of Revenue is responsibility for all executive functions relative to revenue collection. N.C.G.S. § 143B-219 (1990). These include refunding taxes paid by taxpayers who have a valid defense to the collection of such taxes. N.C.G.S. § 105-267 (1989). The State Treasurer is similarly responsible for "the efficient and faithful exercise of the responsibilities of his office," N.C.G.S. § 147-68(e) (1987), including refunding taxes erroneously collected:

> Whenever taxes or other receipts of any kind are or have been by clerical error, misinterpretation of the law, or otherwise, collected and paid into the State treasury in excess of the amount found legally due the State, said excess amount shall be refunded to the person entitled thereto.

N.C.G.S. § 147-84 (1987).

The official duties of neither the Secretary of Revenue nor the Treasurer include responsibility to judge the constitutionality of the statutes authorizing and regulating their departmental functions. Like administrative boards, these offices "have only such authority as is properly conferred upon them by the Legislature. The question of constitutionality of a statute is for the judicial branch." *Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. at 173, 118 S.E.2d at 796. *See also Oil Corp. v. Clayton Comr. of Revenue*, 267 N.C. at 20, 147 S.E.2d at 526 ("The law does not contemplate that administrative boards shall pass upon constitutional questions."). Although the Secretary of Revenue is authorized by N.C.G.S. § 105-266.1 to refund excessive or incorrect taxes paid by a taxpayer who applies for such refund according

to the statutory requisites of section 105-266.1, she is not authorized by that statute or by section 105-267 "to order the refund of an invalid or illegal tax, since questions of constitutionality are for the courts." *Coca-Cola Co. v. Coble*, 293 N.C. at 568, 238 S.E.2d at 783. Like section 105-266.1, authorization for the Treasurer to refund excess taxes under N.C.G.S. § 147-68(e) is limited to taxes erroneously paid and does not include those challenged as unconstitutional.

As we have held with reference to laws alleged to violate the federal Constitution, laws that officials bear a statutory and constitutional duty to uphold are presumptively valid, regardless of allegations that these laws violate provisions of the North Carolina Constitution. Challenges to such laws on constitutional grounds are for the courts alone to decide. Until our courts indicate otherwise, an official who enforces a law as a responsibility of the office is entitled to act on the presumption of validity and "to carry forward the directives of the state legislature" with impunity. We hold neither Secretary Powers nor Treasurer Boyles failed in or wrongfully performed a duty to enforce N.C.G.S. § 105-267 or N.C.G.S. § 147-68 in not refunding taxes paid under that Chapter.

For the reasons given, the trial court's entry of partial summary judgment for plaintiffs is reversed and the case remanded to the Superior Court, Wake County, for entry of summary judgment in favor of defendants. The trial court's entry of summary judgment in favor of Secretary Powers and Treasurer Boyles in their individual capacities is affirmed.

Reversed in part and remanded; affirmed in part.

Justice MITCHELL concurring in part and dissenting in part.

Like the majority, I believe that the trial court was correct in entering summary judgment for the defendants Powers and Boyles as to the claims made against them in their individual capacities. Therefore, I concur in Part IV of the opinion of the majority which affirms summary judgment entered by the trial court in favor of those two defendants.

I dissent from those parts of the opinion of the majority which (1) reverse the trial court's partial summary judgment for the plaintiffs and (2) remand this case to the Superior Court, Wake County, for entry of summary judgment in favor of the remaining defendants.

## BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

The majority concludes that the taxpayer-plaintiffs could not bring this suit because they failed to follow the procedures mandated by N.C.G.S. § 105-267 for the refund of an invalid tax. I do not agree.

Clearly, N.C.G.S. § 105-267 does not expressly preclude collective — as opposed to individual — demands for refunds of taxes. In my view, the terms "person" and "taxpayer" as used in that statute must be held to encompass both individual and collective taxpayers. N.C.G.S. § 12-3 (1990) (words importing the singular to be construed as including the plural unless inconsistent with the manifest intent of the General Assembly). *See Santa Barbara Optical Co. v. State Bd. of Equalization*, 47 Cal. App. 3d 244, 120 Cal. Rptr. 609 (2 Dist. 1975) (terms in a tax statute similar to N.C.G.S. § 105-267 held to include a class). Therefore, the plaintiffs could make a collective demand for a refund under the statute.

Further, I believe that the legislative purpose behind the demand requirement in the statute simply is to give the Department of Revenue fair notice of a possible obligation to refund taxes and an opportunity to prepare to meet that contingency. The essential requirements of the statute in this regard were complied with, in that the Department was given sufficient notice as to both the basis for the challenge to the legitimacy of the tax and the scope of the protesting class. *See Mercury Mach. Importing Corp. v. New York*, 3 N.Y.2d 418, 426, 144 N.E.2d 400, 404, 165 N.Y.S.2d 517, 521 (1957). Therefore, the trial court correctly held that the plaintiffs'

> demands constituted effective demand for refund on behalf of all named and unnamed class members and preserved their rights to claim and seek refunds of all monies unlawfully imposed and collected as a result of the enactment of 1989 Sess. Laws Ch. 792, which had the effect of removing an income exemption on benefits received or monies paid by virtue of State and Local Government Retirement plans or systems.

The trial court was correct in holding that the collective demand on behalf of the plaintiffs had sufficiently complied with any lawful conditions precedent to the bringing of an action such as that brought by these plaintiffs. Therefore, the majority errs in remanding this case for the entry of summary judgment for the defendants on these taxpayers' claims for refunds of taxes allegedly collected unlawfully and unconstitutionally.

BAILEY v. STATE OF NORTH CAROLINA

[330 N.C. 227 (1991)]

Even assuming *arguendo* that these taxpayers failed to follow the procedures established in N.C.G.S. § 105-267 and the administrative regulations adopted pursuant thereto, I believe that they are entitled to proceed with this action against the defendants. Under the facts presented here, the taxpayers were not required to pursue their administrative remedies before bringing this suit. Failure to exhaust administrative remedies does not bar judicial action, when those administrative remedies are inadequate. *Orange County v. North Carolina Dept. of Transportation,* 46 N.C. App. 350, 376, 265 S.E.2d 890, 908, *disc. rev. denied,* 301 N.C. 94 (1980); Daye, North Carolina's New Administrative Procedure Act: An Interpretive Analysis, 53 N.C.L. Rev. 833, 907 (1975). The administrative rights and remedies provided by N.C.G.S. § 105-267 are inadequate in the situation presented by the facts of this case. *See Gramling v. Maxwell,* 52 F.2d 256, 260 (W.D.N.C. 1931) (administrative procedures provided by the statute held inadequate in case brought by over 400 individuals to enjoin enforcement of a license tax on the trucks of fruit and vegetable growers). Therefore, the taxpayer-plaintiffs were not required to exhaust the administrative remedies of N.C.G.S. § 105-267 before initiating this action.

Additionally, courts have not required that plaintiffs exhaust administrative remedies before bringing suit, where pursuing the administrative remedies would be futile. *State ex rel. Utilities Commission v. Southern Bell Tel. & Tel. Co.,* 93 N.C. App. 260, 268, 377 S.E.2d 772, 776 (1989), *rev'd on other grounds,* 326 N.C. 522, 391 S.E.2d 487 (1990); Daye, 53 N.C.L. Rev. at 907. Pursuing an administrative remedy is "futile" when it is useless to do so either as a legal or practical matter. *See Honig v. Doe,* 484 U.S. 305, 327, 98 L. Ed. 2d 686, 709 (1988). If there has ever been a case in which it would be futile for the plaintiffs to exhaust their administrative remedies before pursuing their remedies in court, this is that case.

Here, the Department of Revenue has announced that it will not grant the refunds sought by the taxpayer-plaintiffs. In fact, as the majority points out in its opinion, the defendants do not have the power to pass upon the constitutionality of the tax under challenge in this case because decisions as to the constitutionality of tax statutes are *exclusively* for the judiciary. Thus, it is clear beyond any reasonable doubt that requiring these taxpayers to jump through the procedural hoops adopted and applied by the

State bureaucracy under N.C.G.S. § 105-267 would be to force them to do an utterly vain and useless act, since the defendants are without authority to grant the relief requested. *See Murphy v. Greensboro*, 190 N.C. 268, 129 S.E. 614 (1925) (taxpayer not required to exhaust condition precedent before bringing suit to challenge tax); *Waddill v. Masten*, 172 N.C. 582, 90 S.E. 694 (1916) (taxpayers not required to follow statutory procedures for requesting tax refund before bringing suit). I believe that the common law doctrine of *lex neminem cogit ad vana seu inutilia peragenda*—the law compels no one to do vain or useless things—applies in this situation. *See* N.C.G.S. § 4-1 (1986). Therefore, I strenuously disagree with the majority's conclusion that the defendants are entitled to summary judgment in their favor because the taxpayer-plaintiffs have not, in the view of the majority, complied with the technical requirements of the statute—acts which clearly would be vain and useless in this case.

These taxpayers were entitled to institute and pursue this suit against the defendants. The majority errs in reversing the trial court's judgment to that effect and further errs in remanding this case for the entry of summary judgment for the defendants. Accordingly, I dissent from those parts of the opinion of the majority.